(979 P.2d 1261)
No. 80,670

GASPAR RAMIREZ, *Appellee*, v. EXCEL CORPORATION, *Appellant*.

Opinion filed May 7, 1999.

*D. Shane Bangerter* and *Stephen M. Kerwick*, of Foulston & Siefkin, L.L.P., of Dodge City, for appellant.

*Chris A. Clements*, of Wilson, Lee & Gurney, of Wichita, for appellee.

Before MARQUARDT, P.J., RULON, J., and WAHL, S.J.

RULON, J.: Respondent Excel Corporation (Excel) appeals from a decision of the Workers Compensation Board awarding claimant Gaspar Ramirez a work disability in excess of his functional impairment rating. We reverse and remand the cause with directions.

Claimant was employed by respondent as an inside meat skirt trimmer. On August 16, 1994, Dr. Pedro A. Murati examined claimant and diagnosed him with having a bilateral bicipital tendinitis, bilateral tennis elbow, and trigger fingers of the left third, fourth, and fifth digits. Claimant subsequently had nerve conduction studies performed which indicated bilateral carpal tunnel syndrome and Guyon canal syndrome. Claimant was placed on work restrictions and assigned light duty work in the laundry room of respondent's facility.

On February 16, 1995, claimant filed an application for hearing with the Workers Compensation Division. On February 20, 1995,

claimant was terminated for failing to disclose in his employment application that he had a prior workers compensation claim involving his back.

On the day of claimant's termination, Dr. Ernest R. Schlachter conducted an independent medical evaluation on claimant. Dr. Schlachter diagnosed claimant's condition as overuse syndrome of both shoulder girdles and both upper extremities with entrapment neuropathy of the ulnar nerve at the elbow, bilaterally, and the median and ulnar nerve at the wrist, bilaterally. Dr. Schlachter placed permanent restrictions on claimant's activities and opined claimant had suffered a 73% loss of ability to perform work tasks. Dr. Murati, on the other hand, opined claimant suffered a 47% loss of ability to perform work tasks.

During the proceedings before the administrative law judge (ALJ), respondent stipulated that claimant's accidental injuries arose out of and in the course of his employment. The parties agreed that claimant suffered a functional impairment of 24% to the body as a whole.

The ALJ awarded permanent partial disability benefits to claimant based on his 24% functional impairment. The ALJ found claimant suffered a 47% task loss based on Dr. Murati's testimony. The ALJ found, however, that claimant's wage loss resulted from his termination for failing to disclose a prior injury in his employment application and not from the work-related injuries. Claimant subsequently appealed to the Workers Compensation Board (Board).

A majority of the Board modified the ALJ's award, finding claimant was entitled to work disability in excess of his functional impairment rating. The majority stated:

"Here, the claimant was returned to work with the respondent at an accommodated position after the injury. However, respondent discovered during this period of time that claimant had falsified his pre-employment application with regard to a prior workers compensation injury in California. . . . It is significant that the injury in California has no bearing on the upper extremity injury suffered by claimant in this instance. None of the tasks listed by Dr. Ernest Schlachter and Dr. Murati appear to exceed the 50-pound lifting limitation placed on claimant by the company physician in California in 1990. Therefore, the Appeals Board finds that claimant is entitled to a work disability based upon both the task loss and wage loss prong of K.S.A. 44-510e. In considering claimant's 47 percent loss

of task performing ability with the 100 percent loss of wages, as claimant was unemployed at the time of regular hearing, the Appeals Board finds claimant is entitled to a 73.5 percent permanent partial disability as a result of the injuries suffered while employed with respondent.

"The Appeals Board awards a work disability in this instance despite claimant's falsification of his pre-employment application and concludes that the employment contract entered into between claimant and respondent did not change the employer/employee relationship with regard to claimant's entitlement to workers compensation benefits. For the employment contract to be void, sufficient for the purpose of denying workers compensation coverage, claimant's fraud would have had to have a causal relationship to claimant's injury."

A minority of the Board disagreed, noting

"it would be inappropriate for claimant to be awarded a work disability based upon his loss of wages when respondent put forth the effort to return claimant to work at an accommodated position and claimant's loss of employment resulted purely from his own actions, *i.e.*, the falsification of his employment application at the time of his hire."

Respondent appeals from the Board's majority decision.

Respondent argues the Board erred in not applying the presumption against work disability in this case because claimant returned to work at an accommodated position after his injury and before he was terminated for cause.

This court's standard of review is set forth in the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* For purposes of this appeal, this court may only grant relief if "the agency has erroneously interpreted or applied the law" or "the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole." K.S.A. 77-621(c)(4), (7).

In Kansas, work disability is found and measured by considering the percentage of the worker's loss of ability to perform work tasks and the actual loss of wages resulting from the worker's disability. K.S.A. 44-510e(a) provides, in pertinent part:

"The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding the accident,

averaged together with the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker is earning after the injury. . . . An employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment as long as the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury."

K.S.A. 44-510e(a) precludes permanent partial disability compensation in excess of the functional impairment as long as the worker earns 90% of his or her pre-injury wage. See *Lee v. Boeing Co.*, 21 Kan. App. 2d 365, 371-72, 899 P.2d 516 (1995). However, an employee may still be entitled to permanent partial disability benefits if the employer conducts an economic layoff or the employee's accommodated position is no longer available. See *Watkins v. Food Barn Stores, Inc.*, 23 Kan. App. 2d 837, 838-39, 936 P.2d 294 (1997).

Kansas courts have found that under certain circumstances, a worker is precluded from obtaining permanent partial disability compensation. In *Perez v. IBP, Inc.*, 16 Kan. App. 2d 277, 826 P.2d 520 (1991), Perez argued that his work-related injuries prevented him from engaging in any type of employment following his termination from IBP for absenteeism. The ALJ, the director of workers compensation, and the trial court all found that Perez had failed to show a work disability. On appeal, this court recognized that "K.S.A. 1990 Supp. 44-510e(a) creates a presumption that no work disability exists under circumstances where the worker returns to the same work, for the same wage, after an injury." 16 Kan. App. 2d at 279. This court noted the evidence revealed that Perez returned to work almost immediately after his injury, worked 33 out of 57 days, and was ultimately terminated for absenteeism. This court concluded by affirming the award limiting Perez to his demonstrated functional impairment. 16 Kan. App. 2d at 279.

In *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995), Foulk was placed on work restrictions after suffering a back injury. In response, the employer offered Foulk a different job within her restrictions, at the same rate of pay, but Foulk rejected the offer and never at-

tempted to perform the new job. 20 Kan. App. 2d at 280. On appeal, Foulk argued the presumption of no disability under K.S.A. 1988 Supp. 44-510e(a) did not apply to cases where the worker has the ability to engage in work for comparable wages but does not do so. 20 Kan. App. 2d at 283. This court rejected Foulk's argument, noting "[t]o construe K.S.A. 1988 Supp. 44-510e(a) as claimant suggests would be to reward workers for their refusal to accept a position within their capabilities at a comparable wage." 20 Kan. App. 2d at 284.

In *Copeland v. Johnson Group, Inc.*, 24 Kan. App. 2d 306, 944 P.2d 179 (1997), Copeland sought workers compensation benefits after she failed to return to work in an accommodated position. The ALJ awarded benefits based on a 10% functional impairment but no work disability because Copeland refused accommodated employment. The Board modified the award, finding Copeland had an 80% work disability based on a 100% wage loss. On appeal, the employer argued that because Copeland still had the ability to earn wages at the time of her injury, she was not entitled to a work disability. 24 Kan. App. 2d at 319.

This court reversed the Board's decision, stating:

"In attempting to harmonize the language of K.S.A. 44-510e(a) with the principles of *Foulk*, we find the factfinder must first make a finding of whether a claimant has made a good faith effort to find appropriate employment. If such a finding is made, the difference in pre- and post-injury wages based on the actual wages can be made. This may lead to a finding of lesser wages, perhaps even zero wages, notwithstanding expert opinion to the contrary.

"If a finding is made that a good faith effort has not been made, the factfinder will have to determine an appropriate post-injury wage based on all the evidence before it, including expert testimony concerning the capacity to earn wages." 24 Kan. App. 2d at 320.

We conclude the majority decision of the Board is erroneous both in its analysis and result. The facts of this case are controlled by our decisions in *Perez v. IBP, Inc.*, and *Foulk v. Colonial Terrace*.

We reverse the Board's decision and remand the cause with directions to enter an award limited to claimant's stipulated functional impairment.