(138 P.3d 790)
No. 95,811

RONALD E. MAHAN, *Appellee*, v. CLARKSON CONSTRUCTION COMPANY and ACIG INSURANCE COMPANY, *Appellants*.

Opinion filed July 21, 2006.

*Andrew S. Mendelson*, of Cowing & Mendelson, P.C., of Lee's Summit, Missouri, for appellants.

*Robert W. Harris*, of Kansas City, Kansas, for appellee.

Before MCANANY, P.J., GREENE and HILL, JJ.

GREENE, J.: Clarkson Construction Company and ACIG Insurance Company appeal the Workers Compensation Board's award of work disability to Ronald E. Mahan, arguing that Mahan's failure to exercise good faith in retaining his employment should have precluded the award. We agree, reverse the award, and remand with directions.

### Factual and Procedural Background

Mahan injured his back during his employment by Clarkson but

tested positive for cocaine in the postaccident drug test. As a result of the test result, Mahan was terminated but advised that he would be eligible for continued employment by Clarkson upon completion of a drug rehabilitation program. Mahan made no effort to participate in the program and claimed no impediment to his participation.

Mahan was diagnosed by his treating physician as having a muscle injury resulting in a functional impairment of 5% of the body as a whole. An evaluation by a second physician concluded that he had a functional impairment of 10% of the body as a whole. Mahan was found to be able to perform 7 of 14 tasks identified on his task list with a minimum of accommodation, including 4 of 7 performed for Clarkson. In the nearly 17-month period between his injury and the administrative hearing, Mahan worked for only 6 weeks at a used car dealership and then as a part-time bartender "on and off" for 2 months.

The administrative law judge (ALJ) concluded that Mahan failed to make a good faith effort to obtain employment but determined that he suffered a wage loss of 50% and therefore calculated Mahan's permanent partial general disability at 46.5%. The ALJ awarded Mahan 31 weeks of temporary total disability compensation at $440 per week ($13,640) and 185.54 weeks of permanent partial disability compensation of $440 per week ($81,637.60).

The Board modified the ALJ's award to increase the permanent partial general disability from 46.55 to 63%, concluding that Mahan failed to make good faith efforts to retain his employment or find other appropriate employment but also concluding that Clarkson did not meet its burden to show that Mahan would have been accommodated, thus imputing a postinjury wage loss of 75%. Clarkson and ACIG appeal.

### Standard of Review

An appellate court's review of questions of fact in a workers compensation case is limited to whether the Board's findings of fact are supported by substantial competent evidence, which is a question of law. *Copeland v. Johnson Group, Inc.*, 24 Kan. App. 2d 306, 311-12, 944 P.2d 179 (1997). Substantial evidence is evi-

dence that possesses something of substance and relevant consequence and carries with it fitness to induce the conclusion that the award is proper or furnishes a substantial basis of fact from which the issue raised can be reasonably resolved. 24 Kan. App. 2d at 312. This court reviews the evidence in the light most favorable to the prevailing party and does not reweigh the evidence or assess the credibility of the witnesses. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 285-86, 887 P.2d 140, *rev. denied* 257 Kan. 1091 (1995). Negative factual findings will not be disturbed on appeal absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. *General Bldg. Contr., LLC v. Board of Shawnee County Comm'rs*, 275 Kan. 525, 541, 66 P.3d 873 (2003).

### Did the Board Err in Concluding that Mahan was Entitled to Permanent Partial General Disability Compensation?

Clarkson and ACIG argue that Mahan should be precluded from an award of work disability benefits by reason of K.S.A. 44-510e that provides:

"[A]n employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment as long as the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury."

The argument is that Mahan could have completed drug rehabilitation and returned to an accommodated position with Clarkson at the same or similar wage, but he voluntarily declined to do so. Based upon this inaction, Clarkson argues that Mahan should be ineligible for work disability benefits, citing *Lowmaster v. Modine Mfg. Co.*, 25 Kan. App. 2d 215, 962 P.2d 1100, *rev. denied* 265 Kan. 885 (1998).

In its argument, however, Clarkson seems to confuse the findings of lack of good faith in retaining or in finding employment with the Board's finding as to accommodation by the employer. In fact, the Board found that "the record fails to establish that it is more probably true than not that [Clarkson] could have accommodated claimant's permanent medical restrictions and what such accommodated employment would have paid." Before we apply

appropriate legal authorities, we must determine whether this negative finding disregarded undisputed evidence or was motivated by extrinsic concerns. See *General Building Contr*, 275 Kan. at 541.

The Board quoted some of the relevant testimony in its order. The loss control director for Clarkson's subsidiary, Anthony Tilson, testified as follows:

"Q. [Clarkson counsel:] Now, I'll just represent to you this is a copy of permanent restrictions issued to Mr. Mahan by Dr. Fishman. And this piece of paper has previously been admitted as an exhibit in several other depositions in this case and it includes restrictions as of July 13th which state, 'No twisting. No squatting. No pushing/pulling over 35 pounds on an occasional basis only. No stooping. No lifting greater than 30 pounds knuckle to shoulder, shoulder to overhead, 20 pounds floor to knuckle. No repetitive bending of lower back.' Then at the bottom, 'No carrying over 20 pounds on an occasional basis.' Have you ever seen a Clarkson employee with similar restrictions?

"A. (Mr. Tilson) Yes, I have.

*"Q. Are you—do you know if Clarkson is potentially able to accommodate an employee with this type of restriction?*

*"A. Yes, they are.*

"Q. In the past are you aware of Clarkson ever having actually accommodated employees with these type[s] of restrictions?

"A. Yes.

. . . .

"Q. [Clarkson counsel:] Do you have any knowledge about the—about prior situations where Clarkson has put an employee back to work after going through drug rehab and whether or not they changed that employee's pay rate?

"A. No, I don't.

"Q. Okay. Do you have any knowledge of Clarkson ever lowering somebody's pay rate after going back to work after drug rehab?

"A. No, I do not." (Emphasis added.)

On appeal, Mahan cites no evidence disputing this testimony of Tilson. We conclude that the Board's negative finding disregarded undisputed evidence regarding the potential for accommodation. Tilson clearly testified that Clarkson was potentially able to accommodate an employee with this type of restriction and that Clarkson has done so in the past. He further testified that he was unaware of Clarkson "lowering somebody's pay rate after going back to work after drug rehab." Accordingly, we conclude that the Board disregarded undisputed evidence regarding the potential for accommodation and that its factfinding to the contrary was error.

We hold that where the employee has failed to make a good faith effort to retain his or her current employment, a showing of the *potential* for accommodation at the same or similar wage rate precludes an award for work disability. It would be unfair under circumstances where the employee has refused to make himself or herself eligible for reemployment to require the employer to show that the employee was specifically *offered* accommodated employment at the same or similar wage rate. This conclusion is consistent with *Lowmaster*, where this court held:

"In the present case, testimony indicates that Modine [the employer] would have accommodated Lowmaster's work restriction had she not quit her job. It follows, therefore, that she was capable of earning 90% of her pre-loss wage, but chose not to do so. In both cases [*Lowmaster* and *Foulk*], an employee was capable of performing her job, was offered *or would have been offered* accommodated employment, and refused." (Emphasis added.) 25 Kan. App. 2d at 218-19.

Our conclusion is also consistent with the legislative intent underlying K.S.A. 44-510e, as noted by the court in *Foulk*:

"Construing K.S.A. 1988 Supp. 44-510e(a) to allow a worker to avoid the presumption of no work disability by virtue of the worker's refusal to engage in work at a comparable wage would be unreasonable where the proffered job is within the worker's ability and the worker has refused to even attempt the job. The legislature clearly intended for a worker not to receive compensation where the worker was still capable of earning nearly the same wage. Further, it would be unreasonable for this court to conclude that the legislature intended to encourage workers to merely sit at home, refuse to work, and take advantage of the workers compensation system. To construe K.S.A. 1988 Supp. 44-510e(a) as claimant suggests would be to reward workers for their refusal to accept a position within their capabilities at a comparable wage." 20 Kan. App. 2d at 284.

Similarly, to construe K.S.A. 44-510e as suggested by Mahan would reward an employee for his or her refusal to qualify for continued employment and would penalize an employer that is unable to be specific regarding the precise details of accommodated work potential for an employee who has been justifiably terminated. Clarkson demonstrated that other workers with similar restrictions had been accommodated and that Mahan would have that potential but failed to submit to drug rehab. To require Clarkson to further demonstrate what such accommodated employment

would have paid is unduly onerous on the employer where there has not been good faith by the employee to become reemployed.

The Board erred in structuring an award to include work disability. We reverse on this basis and remand with directions for the Board to award functional impairment only.

Reversed and remanded with directions.