(185 P.3d 284)
No. 97,518

Susan T. Gasswint, *Claimant/Appellant*, v. Superior Industries International-Kansas, Inc., *Respondent/Appellee*, and Self-Insured, *Insurance Carrier/Appellee*.

Opinion filed February 8, 2008.

*William L. Phalen*, of Pittsburg, for appellant.

*Troy A. Unruh*, of Pittsburg, for appellees.

Before CAPLINGER, P.J., MALONE, J., and LARSON, S.J.

MALONE, J.: Susan T. Gasswint appeals the decision of the Workers Compensation Board (Board) which denied her claim for a work disability in excess of functional impairment. Gasswint claims the Board erred in finding that she had been terminated from her accommodated position for cause. She also claims that the Board erred in considering an exhibit that was never admitted into evidence. Finding no reversible error, we affirm.

Gasswint worked at Superior Industries International-Kansas, Inc. (Superior), an aluminum wheel manufacturing plant in Pittsburg, Kansas, for 8½ years. In 2000, Gasswint experienced two separate shoulder injuries which she reported to her supervisors. After these injuries, Gasswint continued to work at Superior. Gasswint requested and was granted a transfer to the machine shop. In the machine shop, Gasswint lifted aluminum wheels, weighing approximately 30 pounds each, from bins located at shoulder height and placed the wheels onto the line. After she began lifting the wheels, Gasswint experienced increasing pain in her shoulders.

On November 16, 2003, Gasswint notified Superior about her increasing shoulder pain. Superior sent Gasswint to Occupational Health Services at Mt. Carmel Medical Center for physical therapy. After 2 weeks, she was referred to Dr. Paul Toma, an orthopedic surgeon, who performed surgery on Gasswint's right shoulder. Superior placed Gasswint on light duty in the paint room, at her regular wage, while she was receiving additional physical therapy for the shoulder injuries.

On March 19, 2004, Gasswint submitted a mileage reimbursement request form to Tim Rakestraw, Superior's safety supervisor, for her physical therapy travel costs. The form contained mileage reimbursement requests for three physical therapy appointments

that Gasswint did not attend. Rakestraw discussed the discrepancies with Gasswint, and she told Rakestraw that her husband had completed the form. Rakestraw notified Gasswint that it was her responsibility to complete and submit accurate forms and that "she needed to take this serious, because this was a serious matter of turning in falsified information." Rakestraw also testified that he warned Gasswint that submitting false information a second time could be grounds for termination. Gasswint denied that Rakestraw informed her that she could be terminated if she submitted inaccurate reimbursement forms.

On April 29, 2004, Gasswint submitted another mileage reimbursement request form to Rakestraw. This form contained mileage reimbursement requests for six physical therapy appointments that Gasswint did not attend. After the second incident, Superior placed Gasswint on suspension and subsequently fired her for falsifying documents in violation of company policy.

Gasswint filed a workers compensation claim on August 9, 2004. The administrative law judge (ALJ) accepted the parties' stipulations that the date of the injury was November 16, 2003, that the injury arose out of and in the course of Gasswint's employment at Superior, and that Gasswint's average weekly wage was $958.51 on the date of the accident. The ALJ noted that Gasswint suffered a single repetitive injury to both shoulders, a type of injury governed by K.S.A. 44-510e. The ALJ found that Gasswint had returned to work in an accommodated position and had earned an amount comparable to her preinjury average wage until she was terminated for cause from her employment. The ALJ also found that Gasswint worked for various temporary agencies until she found full-time employment in February 2005, earning an average weekly wage of $280.

The ALJ then applied a good-faith test, stating that "[t]he issue in this case is whether the claimant's termination for cause from the accommodated job amounted to a lack of good faith in obtaining postinjury employment." The ALJ found that "it seems unlikely that [Gasswint], with almost 9 years on the job where she earned over $950 per week, would have intentionally tried to skim a couple of hundred dollars on false mileage claims." The ALJ concluded

that Gasswint's submission of erroneous mileage reimbursement forms did not amount to a lack of good faith in obtaining postinjury employment. The ALJ determined that Gasswint suffered a 26% task loss and a 71% wage loss, resulting in a 48.5% work disability which exceeded her functional impairment of 14%. The ALJ allowed Gasswint a total award of $88,563.20.

Superior appealed to the Board and argued that Gasswint's award should have been limited to her functional impairment because she had been terminated for cause from an accommodated position. A majority of the Board agreed and determined that Gasswint was not entitled to recover for work disability because she had been terminated for cause due to misconduct. The Board specifically found that Gasswint had failed to act in good faith when she submitted the second mileage request form. Accordingly, the Board determined that Gasswint's preinjury earnings at Superior should be imputed as her postinjury wage, which precluded her from recovering for work disability. The Board modified the ALJ's award and based Gasswint's recovery on a 14% functional impairment for a total award of $25,564. Two members of the Board dissented. Gasswint timely appeals.

Gasswint claims the Board erred in determining that she was not entitled to an award of work disability. The Board disallowed Gasswint's award of work disability based solely on its finding that Gasswint had been terminated for cause. This constituted a positive factual finding of the Board, and the correct standard of review is whether the Board's finding was supported by substantial competent evidence. An appellate court has unlimited review of conclusions of law. *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

"Substantial evidence in the workers compensation context is evidence possessing something of substance and relevant consequence to induce conviction that an award is proper; it furnishes a basis of fact from which an issue can be resolved reasonably. We review the evidence in the light most favorable to the prevailing party and do not reweigh competing evidence or assess credibility of witnesses. [Citations omitted.] The Board's findings will be upheld if supported by substantial evidence even though other evidence in the record would have supported contrary findings. [Citation omitted.]" *Graham v. Dokter Trucking Group*, 284 Kan. 547, 553-54, 161 P.3d 695 (2007).

Based on the record, there was substantial evidence to support the Board's finding that Gasswint was terminated for cause. On two separate occasions, Gasswint submitted mileage reimbursement request forms for her physical therapy travel costs. Each form contained requests for mileage reimbursement for appointments that Gasswint did not attend. After the first incident, Rakestraw discussed the discrepancies with Gasswint, and she told Rakestraw that her husband had completed the form. Rakestraw told Gasswint that it was her responsibility to complete and submit accurate forms and that "she needed to take this serious, because this was a serious matter of turning in false information." Rakestraw also testified that he warned Gasswint that submitting false information could be grounds for termination. After the second incident, Superior placed Gasswint on suspension and subsequently fired her for falsifying documents in violation of company policy.

Gasswint asserts on appeal that "it is apparent that the Board disregarded the uncontroverted evidence that [Gasswint's] violation was not willful." Gasswint points to her testimony that she did not review the first inaccurate mileage reimbursement form that her husband filled out and that she thought her husband had corrected the errors before handing in the second form. Gasswint also testified that Rakestraw never told her that she could be terminated if she submitted another inaccurate reimbursement form, but Rakestraw disputed this testimony. Finally, Gasswint points to one instance in Rakestraw's testimony where he conceded that even the second mileage reimbursement form might have been "a mistake" as opposed to intentional misconduct committed by Gasswint. However, this isolated statement by Rakestraw has been taken out of context by Gasswint. A review of Rakestraw's entire testimony clearly demonstrates that he believed Gasswint committed intentional misconduct by submitting the second inaccurate mileage reimbursement form.

Essentially, Gasswint is urging this court to reweigh the evidence and assess the credibility of witnesses. However, it is not this court's function to do so. See *Graham*, 284 Kan. at 554. Although the ALJ apparently found Gasswint to be a credible witness, the Board is authorized to redetermine questions of fact. When viewed in the

light most favorable to Superior, there was substantial competent evidence to support the Board's conclusion that Gasswint was terminated for cause.

After determining the facts, the Board denied Gasswint's award of work disability based on several legal conclusions. First, the Board concluded that Gasswint's violation of Superior's company policy "was tantamount to a refusal to perform appropriate work as in *Foulk*." See *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). In the alternative, the Board concluded that Gasswint's violation of company policy was equivalent to a "failure to make a good faith effort to find or retain employment after recovering from work-related injuries as described in *Copeland*." See *Copeland v. Johnson Group, Inc.*, 24 Kan. App. 2d 306, 944 P.2d 179 (1997). As a third alternative, the Board cited *Ramirez v. Excel Corp.*, 26 Kan. App. 2d 139, 979 P.2d 1261, *rev. denied* 267 Kan. 889 (1999), to support its conclusion that Gasswint was not entitled to work disability because she had been terminated for misconduct.

Gasswint argues that *Foulk* and *Copeland* are distinguishable from her case, and we agree. However, we find *Ramirez* to be on point. In *Ramirez*, the claimant was diagnosed with several repetitive motion injuries involving the use of his fingers. He was placed on work restrictions and assigned light duty work in the respondent's laundry room. The claimant was subsequently fired for failing to disclose in his employment application that he had a prior workers compensation claim. The ALJ found that the claimant was not entitled to recovery for work disability because his wage loss resulted from his termination for cause. However, the Board modified the award and determined that the claimant was entitled to recover for work disability.

The *Ramirez* court referred to the Board's minority opinion which reasoned that it would be inappropriate for the claimant to be awarded work disability when the respondent had made an effort to return the claimant to work at an accommodated position and the claimant's loss of employment resulted purely from his own actions in falsifying his employment application. 26 Kan. App. 2d at 141. The court noted that under certain circumstances, a worker

is precluded from obtaining permanent partial disability compensation when the worker is terminated from an accommodated position for cause, such as absenteeism, or when the worker otherwise rejects an offer to return to the job in an accommodated position. 26 Kan. App. 2d at 142-43. Under the facts and circumstances of the case, the *Ramirez* court reversed the Board's award of work disability. 26 Kan. App. 2d at 143.

In another case, *Mahan v. Clarkson Constr. Co.*, 36 Kan. App. 2d 317, 138 P.3d 790, *rev. denied* 282 Kan. 790 (2006), the employee injured his back during the course of employment but also tested positive for cocaine during a postinjury drug test. The employee was fired, but the employer advised him that he would be eligible for continued employment if he completed a drug rehabilitation program. However, the employee made no effort to complete the program. In a 17-month period between his injury and the administrative hearing, the employee worked for only 6 weeks at odd jobs. The *Mahan* court held that where the employee has failed to make a good faith effort to retain his or her current employment, a showing of the potential for accommodation at the same or similar wage rate precludes an award for work disability. 36 Kan. App. 2d at 321.

Based on *Ramirez* and *Mahan*, we agree with the Board that it would be inappropriate for Gasswint to recover for work disability when Superior had attempted to place Gasswint in an accommodated position and Gasswint's loss of employment resulted purely from her own misconduct. Under these circumstances, Gasswint's preinjury earnings at Superior are imputed as her postinjury wage, thereby precluding her recovery for work disability in excess of functional impairment.

As a final issue, Gasswint argues that the Board erred in considering an exhibit that was never admitted into evidence. Gasswint asserts that a copy of an order from the Department of Human Resources, Division of Workers Compensation (Order), attached to Superior's submission letter to the ALJ, was considered by the Board even though it was not part of the evidentiary record. The document was the initial hearing officer's determination in an ac-

tion against Gasswint for making a false statement in order to obtain workers compensation benefits.

" 'The test to be applied when a claim is made that evidence was erroneously admitted in a workers compensation proceeding is whether "the decision is based upon substantial and satisfactory evidence, relevant, reasonable and persuasive, though not technically admissible under the rules of evidence." ' " *Locks v. Boeing Co.*, 19 Kan. App. 2d 17, 22, 864 P.2d 738, *rev. denied* 253 Kan. 859 (1993). The rules of evidence are not applicable in workers compensation proceedings. The admissibility of evidence is more liberal in compensation cases, not more restrictive. *Roberts v. J.C. Penney Co.*, 263 Kan. 270, 281, 949 P.2d 613 (1997).

Here, the Board may have erred in considering the Order attached to the submission letter because it was not part of the evidentiary record and the parties had not agreed to the admission of the evidence. Nevertheless, we find the error to be harmless because the Board explicitly stated that the preliminary Order "will not be accorded any weight" in reaching its decision. Thus, it is clear that this evidence had no bearing on the Board's decision to deny Gasswint's award for work disability.

Affirmed.