(199 P.3d 798)
No. 99,535

Lazaro Gutierrez, *Appellee*, v. Dold Foods, Inc., *Appellant*.

—

1136

*Douglas D. Johnson*, of Johnson, Kennedy, Dahl & Willis, of Wichita, for appellant.

*Dale V. Slape*, of Slape & Howard, Chtd., of Wichita, for appellee.

Before CAPLINGER, P.J., LEBEN, J., and BUKATY, S.J.

LEBEN, J.: Lazaro Gutierrez injured his back while working for Dold Foods, Inc. The Kansas Workers Compensation Board gave him a permanent partial disability award of 62% based on the average of his wage loss (61%) and his loss of ability to perform work-related tasks (62%). The average of wage and task loss is referred to as a work-disability award, and a worker is entitled to that amount for an unscheduled permanent partial disability award under K.S.A. 44-510e(a) unless the person is earning 90% or more of his or her pre-injury wage. In that case, the worker gets a lesser award.

Dold Foods argues that Gutierrez should receive a lower award because Dold Foods fired him for cause based on an inaccurate statement Gutierrez made on a form he had filled out for a temporary-employment firm, which placed him at Dold Foods. But nothing in the Kansas workers compensation statute suggests lowering an award for such a reason. In addition, we agree with the Workers Compensation Board that the case upon which Dold Foods relies, *Ramirez v. Excel Corp.*, 26 Kan. App. 2d 139, 979 P.2d 1261, *rev. denied* 267 Kan. 889 (1999), is distinguishable—and it may no longer be valid anyway given the Kansas Supreme Court's recent admonitions to follow the statute as it is written.

The availability of workers compensation benefits to injured employees arises under statutes, not under the court-made common law. The Kansas Legislature, like those of other states, has enacted a system under which employees lose the right to sue their employers for most on-the-job injuries but gain guaranteed compensation under workers compensation laws. We must begin our anal-

ysis, as we do in any case governed by a statute, with the specific words chosen by the legislature.

*The Kansas Workers Compensation Act Provides a Detailed Method for Calculating a Permanent Partial Disability Award.*

The Kansas Workers Compensation Act provides specified recoveries for some injuries that are listed on a schedule, ranging from 225 weeks of benefit payments for the loss of use of a shoulder to 15 weeks for the loss of use of the little finger. See K.S.A. 44-510d; *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, Syl. ¶ 7, 154 P.3d 494 (2007); *Stephen v. Phillips County*, 38 Kan. App. 2d 988, 990, 174 P.3d 452, *rev. denied* 286 Kan. 1186 (2008). When a worker has a lasting injury not listed on the schedule that causes partial disability, K.S.A. 44-510e(a) provides a benefit for the permanent partial general disability. All of the provisions we review in the rest of this opinion are from that statute, K.S.A. 44-510e(a).

The statute begins with a two-part definition of how to calculate a percentage used to determine that award; the worker's percentage loss of ability to perform work-related tasks is averaged with the percentage loss of earnings:

"The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding the accident, averaged together with the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker is earning after the injury."

The average of the task-loss and wage-loss percentages is "the percentage of permanent partial general disability." To determine the final award, that percentage is multiplied by a payment rate, which is based on the worker's average wages up to a statutory maximum, and a certain number of weeks, which is based in part on how long temporary disability payments were made.

So far, the determination of the percentage of permanent partial general disability seems simple enough: average the task-loss and wage-loss percentages. But the statute provides two other wrinkles by including both a ceiling and a floor on potential awards.

While factoring the post-injury wage loss into the award provides partial compensation for wage loss, the statute provides a cap and a bottom to potential awards. The statute limits the award when a worker is earning at least 90% of the wage earned before the injury:

"An employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment as long as the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury."

This portion of the statute sets a ceiling on the award when the worker is earning at least 90% of pre-injury wages. In that event, the percentage of permanent partial general disability may not exceed the percentage of functional impairment, which is the extent that a person has lost some of his or her body's capability. The statute also provides how functional impairment is to be determined—by medical testimony based on a standard guide on the evaluation of impairments. The statute separately sets a floor on the award: "In any event, the extent of permanent partial general disability shall not be less than the percentage of functional impairment."

In sum, let's review how the statute says to calculate the percentage of permanent partial general disability. Our Supreme Court has summarized the general rule: "Stated mathematically, the percentage of permanent partial general disability is equal to the percentage of task loss plus the percentage of wage loss divided by two." *Graham v. Dokter Trucking Group*, 284 Kan. 547, Syl. ¶ 4, 161 P.3d 695 (2007). Because this award provides some compensation based on post-injury wage loss, we often refer to it as a work-disability award. See *Graham*, 284 Kan. at 556. If the employee is earning more than 90% of pre-injury wages, however, the percentage of permanent partial general disability may not exceed the percentage of functional impairment. Because this award is based solely on functional impairment, we sometimes refer to it as a functional-impairment award. But neither of those terms is found in the statute—they merely describe two different methods set out in the statute for calculating the percentage of permanent partial general disability.

*The Workers Compensation Board Followed the Statutory Formula.*

The Workers Compensation Board found that Gutierrez had lost the ability to perform 62% of the work-related tasks he had done in the past. The Board found that his post-injury wages were 61% lower than they had been; he averaged $662.89 per week before the accident but only $260 per week at the time of his hearing. The Board averaged those percentages (62% and 61%)—apparently using only whole numbers—and determined that Gutierrez' percentage of permanent partial general disability was 62%. Since Gutierrez was earning far less than 90% of his pre-injury wages, the statutory ceiling on a partial general disability award was not applicable. The Board's calculations thus followed the statutory formula.

*Dold Foods' Argument Is Based on Concepts Not Found in the Statutory Language, and the Board Rejected Its Argument.*

Dold Foods does not challenge the accuracy of any of the numbers used by the Board. Dold Foods does not claim the Board's factual finding of a 62% task loss is unsupported by the evidence. Nor does Dold Foods claim that the Board's factual finding was inaccurate that Gutierrez' wages were down 61% from his pre-injury wages. Instead, Dold Foods argues that Gutierrez is entitled only to a functional-impairment award, not a work-disability award, based on concepts not found in the statute.

While Dold Foods doesn't rely on the statute, it does rely on some prior cases of the Court of Appeals, which it contends suggest that Gutierrez should be limited to a functional-impairment award. Gutierrez' functional-impairment rating was 12.5%, far less than the 62% work-disability percentage he received.

Our court first ruled in 1994 that an employee must make a good-faith effort to retain or find employment after an injury as a condition of eligibility for a work-disability award. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 284, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). Later cases determined that a wage higher than actually earned could be imputed to a worker who did not make a good-faith effort to find appropriate employment after

an injury. *E.g., Castro v. IBP, Inc.*, 29 Kan. App. 2d 475, Syl. ¶ 4, 30 P.3d 1033 (2001); *Copeland v. Johnson Group, Inc.*, 24 Kan. App. 2d 306, Syl. ¶¶ 7-8, 944 P.2d 179 (1997). In a more recent ruling, a panel of our court held that "any showing of the potential for accommodation at the same or similar wage rate precludes an award for work disability." *Mahan v. Clarkson Constr. Co.*, 36 Kan. App. 2d 317, Syl. ¶ 2, 138 P.3d 790, *rev. denied* 282 Kan. 790 (2006). In these cases, our court did not cite any statutory language that directly supported the ruling but generally concluded that it would be unreasonable to interpret the statutory language so as to allow workers "to merely sit at home, refuse to work, and take advantage of the workers compensation system." *Mahan*, 36 Kan. App. 2d 317, Syl. ¶ 3; *Copeland*, 24 Kan. App. 2d 306, Syl. ¶ 6; *Foulk*, 20 Kan. App. 2d at 284.

This good-faith requirement has been extended to a situation in which a worker was fired for cause after having returned to work from an injury. *Ramirez v. Excel Corp.*, 26 Kan. App. 2d 139 (worker fired for false statements in employment application denied work-disability award); *Perez v. IBP, Inc.*, 16 Kan. App. 2d 277, 826 P.2d 520 (1991) (worker fired for absenteeism denied work-disability award). But work-disability awards have been approved for cases in which an employee was terminated in an economic layoff or other than for cause. *Stephen*, 38 Kan. App. 2d at 993, (sheriff who lost re-election could receive work-disability award); *Roskilly v. Boeing Co.*, 34 Kan. App. 2d 196, 116 P.3d 38 (2005) (employee laid off for economic reasons could receive work-disability award); *Lee v. Boeing Co.*, 21 Kan. App. 2d 365, 899 P.2d 516 (1995) (same). And in one case, a work-disability award was upheld even though the employer claimed to have fired the worker for cause based on customer complaints. The court noted that the employee's work restrictions didn't end just because her job did and that the Board found that there was no evidence of an investigation into the complaints or evidence of bad faith by the employee. *Niesz v. Bill's Dollar Stores*, 26 Kan. App. 2d 737, 740-41, 993 P.2d 1246 (1999).

Dold Foods argues that this case is like *Ramirez*: Gutierrez was fired for a false statement in his employment application, and he

would still be employed at Dold Foods in a well-paid position that accommodates his work restrictions had he not been fired for cause. Thus, Dold Foods essentially argues that a wage should be imputed to Gutierrez sufficient to eliminate his eligibility for a work-disability award.

The Board rejected Dold Foods' argument. The Board noted that the statute "contains no . . . provision that failing to make a good faith effort to retain employment is a valid defense to a claim for disability benefits." The Board said that a "literal reading" of the statute would indicate that Gutierrez qualifies for a work-disability award. "But the appellate courts have not always followed the literal language of the statute," the Board said, citing *Foulk*, *Copeland*, *Ramirez*, and *Mahan*. The Board also noted that the Kansas Supreme Court "has recently sent two strong signals that the Workers Compensation Act should be applied as written," not infused with court-created concepts, citing *Graham* and *Casco*. The Board ultimately concluded, however, that the case most closely on point, *Ramirez*, was distinguishable because the employment application in it was the employer's, but Gutierrez filled out an application for a temporary staffing agency, not Dold Foods. On the factual record before it, the Board concluded that Dold Foods had not shown that Gutierrez failed to make a good-faith effort to earn as much as he could after the injury:

"When [Gutierrez] was later hired by respondent he completed a new job application that did not ask about prior surgeries. [The] facts neither establish that respondent acted in good faith in terminating claimant [nor] that claimant failed to make a good faith effort to perform accommodated work. Claimant is not attempting to manipulate the workers compensation system. Accordingly, claimant is not precluded from receiving a work disability under K.S.A. 44-510e."

*We Find No Basis Here to Overturn the Board's Decision.*

With the language of the statute, prior caselaw, and the facts of Gutierrez' case in mind, we turn to consideration of the Board's ruling. Appellate courts are "highly deferential" to the Board's factual conclusions. *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, Syl. ¶ 1, 189 P.3d 508 (2008). We also give deference to the Board's interpretation of the Workers Compensation Act when there is a rational basis for its interpretation, *Casco*, 283 Kan. 508, Syl. ¶ 5,

but the court must ultimately determine the statute's meaning. *Graham*, 284 Kan. 547, Syl. ¶ 2.

This case could be easily decided if we were to determine that *Foulk* and later cases based on it were no longer valid after the Supreme Court's rulings in *Casco* and *Graham*. Indeed, a strong argument for such a ruling could be made.

The Supreme Court in *Graham* applied the same work-disability formula from K.S.A. 44-510e(a) that is at issue in Gutierrez' case. One of the issues in *Graham* involved how to interpret the phrase that placed a statutory ceiling on an award: "as long as the employee *is engaging* in any work for wages equal to 90% or more" of the worker's previous average wages. (Emphasis added.)

Before the case reached the Supreme Court, a panel of our court heard the case. The panel cited *Foulk* for the proposition that "[t]he legislature clearly intended for a worker not to receive compensation where the worker was still capable of earning nearly the same wage." *Graham v. Dokter Trucking Group*, 36 Kan. App. 2d 521, 526, 141 P.3d 1192 (2006). The panel then held that because the employee had worked enough in some weeks after the injury that he made 90% of his prior average wage in those weeks, he should be precluded from a work-disability award. Our panel interpreted the phrase "is engaging in any work" to include work that the employee *could* have engaged in but didn't. 36 Kan. App. 2d at 526-28. A similar approach had been taken in *Foulk*, where our court rejected the worker's argument that the statute says "engages in any work," not "possess[es] the ability to engage in work." 20 Kan. App. 2d at 283-84.

But the Supreme Court disagreed in *Graham*, rejecting this interpretation and emphasizing that the statutory language—"is engaging in work"—could not be interpreted to mean "is able to earn":

"The panel began its discussion by equating the statute's use of the phrase 'engaging in work' to 'able to earn.' K.S.A. 44-510e(a) prohibits permanent partial general disability compensation if an employee is 'engaging in work' for wages equal to 90 percent or more of the average preinjury wage. The panel said the record was insufficient to support claimant's contention that he was 'unable to earn' that amount. We see a distinction with impact between the actual 'engaging

in work' of the statute and the theoretical 'able to earn' of the Court of Appeals. Claimant may be theoretically able to earn more, but substantial evidence supports the Board's determination that his actual pain prevents the theory from becoming a reality.

"The Court of Appeals panel also reexamined claimant's postinjury records and found that, in certain weeks, he earned 90 percent or close to 90 percent of his preinjury wages. [Citation omitted.] In doing so, the panel implicitly rejected the apples-to-apples approach of the Board and ALJ, *i.e.*, comparing preinjury and postinjury weekly averages rather than comparing a preinjury average to cherry-picked postinjury weeks. Again, the plain language of the statute did not support the panel's method; the statute repeatedly references gross weekly wage averages." 284 Kan. at 558.

The Supreme Court in *Graham* emphasized that, at least on the issues before it, K.S.A. 44-510e(a) was plain and unambiguous, so that the court could not "read the statute to add something not readily found in it." 284 Kan. at 554, 556-59.

The *Casco* case also emphasized the plain language of the statute. In *Casco*, the Supreme Court overruled a 1931 case interpreting the workers compensation statute because the court concluded in 2007 that the earlier case "did not follow a key tenet of statutory construction—courts cannot add something to a statute that is not readily found in the language of the statute." 283 Kan. at 525 (overruling *Honn v. Elliott*, 132 Kan. 454, 295 Pac. 719 [1931]).

Dold Foods' argument certainly seems to violate the principal teaching of *Graham* and *Casco*—that you don't add something to a statute's requirements that isn't actually found in the statute.

Ultimately, though, we need not determine whether *Graham* and *Casco* (and *Hall*, which declined an invitation to overrule *Casco*) have effectively removed any persuasive precedential authority from *Foulks, Castro, Copeland, Mahan*, and *Ramirez*: the Board's conclusions are supported by its factual findings and are not contrary to the actual ruling in any of those cases.

First, the Board concluded that Dold Foods had not established "that claimant failed to make a good faith effort to perform accommodated work." The Board's finding that a party has failed to meet its burden of proof is a negative finding, which may be overturned on appeal only on a showing that the Board arbitrarily ignored

undisputed evidence or acted based on bias, passion, or prejudice. *Hall*, 286 Kan. 777, Syl. ¶ 3. If a good-faith requirement were to exist, even though it is not found in the statute, surely the employer would have the burden to demonstrate the worker's failure to make a good-faith effort. We cannot overturn the Board's negative finding that Dold Foods failed to do so. Even if we apply the normal standard for review for the Board's factual findings on the assumption that Gutierrez had the burden to show his good-faith efforts, evidence in the record supported the Board's implicit factual finding that he did so. Any factual finding of the Board must be upheld when evidence in the record, taken in the light most favorable to the prevailing party, supports the finding. *Hall*, 286 Kan. at 780.

Second, the Board concluded that the *Ramirez* case, the one most closely analogous to Gutierrez', was different in an important way. Specifically, the Board noted that the employee in *Ramirez* had given false information in an employment application submitted directly to the employer where the injury occurred, while Gutierrez submitted his allegedly false information to a temporary-staffing agency, not Dold Foods. The Board's factual finding on that point is supported by the record, and the difference is not insignificant. As the Board noted, the temporary-staffing agency obtained workers who were employed on a probationary basis. After completing that probationary period, the workers filled out another application directly with Dold Foods, and that application did not ask about past injuries or surgeries. And Gutierrez, who doesn't speak English, said he didn't personally fill out the staffing agency's application, which asked about past injuries, and that the person who helped him fill out that form didn't ask him about past injuries. While there is evidence in support of Dold Foods' position, there is also support in favor of Gutierrez'. We cannot reverse the Board's factual finding in the face of conflicting evidence.

We note that a panel of our court applied *Ramirez* in a case decided last year. *Gasswint v. Superior Industries Int'l-Kansas, Inc.*, 39 Kan. App. 2d 553, 558-59, 185 P.3d 284 (2008). In that case, the Board denied a work-disability award when the claimant, who was in an accommodated position, was fired for falsifying expense claims. Our court upheld the Board, finding that sufficient

evidence in the record supported the Board's conclusion that the claimant had been fired for cause. But the claimant in *Gasswint* did not argue that the statute had no bar to a work-disability award when a claimant is fired for cause or that the Board had in any way wrongly interpreted the statute. Instead Gasswint based her appeal on the claim that the Board's factual findings disregarded undisputed evidence or showed bias. Thus, the legal rules set forth in *Ramirez* and other cases were not disputed in *Gasswint*.

Given the substantial question regarding whether *Ramirez* remains good law after *Graham* and *Casco*, we decline to extend *Ramirez* to the factual situation at issue in Gutierrez' case. Given the Board's factual findings that Dold Foods had not established that Gutierrez "failed to make a good faith effort to perform accommodated work," his case is more like *Niesz*, in which a work-disability award was affirmed and the Board found there had been no evidence that the employee showed bad faith, even though she was fired based on a claim of just cause to do so. 26 Kan. App. 2d at 740-41. The Board's factual findings in Gutierrez' case are supported by the record, and the Board's award tracks the approach set out in the statute for calculating it. The decision of the Board is therefore affirmed.