No. 99,369

CAROLYN BERGSTROM, *Appellant*, v. SPEARS MANUFACTURING COMPANY AND ZURICH U.S. INSURANCE COMPANY, *Appellees*.

(214 P.3d 676)

Opinion filed September 4, 2009.

*William L. Phalen*, of Pittsburg, argued the cause, and *Crystal D. Marietta*, of Pittsburg, was with him on the brief for appellant.

*Larry Shoaf*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

ROSEN, J.: This workers compensation appeal comes before the court on transfer from the Court of Appeals. The appellant, Carolyn Bergstrom, seeks review of an order by the Workers Compensation Board decision limiting her compensation under the

"good-faith effort" doctrine articulated by the Court of Appeals in previous cases. We find that the good-faith effort doctrine is not grounded in statute and was therefore improperly applied by the Board.

The factual background can be summarized as follows. Beginning in December 2000, Bergstrom was employed by Spears Manufacturing, Inc., a manufacturer of plastic plumbing parts. As of June 2002, she worked as a production janitor for Spears. On September 23, 2002, she lifted a garbage can containing plastic residue purged from the production machine. When she put the can down, she began to experience pain in her back and was unable to continue the job. She informed her supervisor, who made out an accident report and assigned her to sorting parts for the rest of the day.

The following day, Bergstrom experienced extreme pain and was sent to a nurse practitioner, who prescribed pain medication. She returned to work a couple of days later and was assigned to sorting parts, a task that she could not carry out because she was unable to sit and bend over for an extended time. She was then reassigned to putting parts on a conveyor line (the "bar code" job), but she was unable to continue with that assignment because standing in one place caused her too much discomfort.

Bergstrom was referred to Dr. James Zeiders, an orthopedic surgeon, who directed her to stop working and to file for Social Security disability benefits. She then saw a succession of medical and psychological professionals, who conducted a number of tests on her. These included Dr. Anthony Pollock, an orthopedic surgeon; Dr. T.A. Moeller, a psychologist; and Dr. Chris Fevurly, a physician.

Bergstrom filed an application for a hearing before the Division of Workers Compensation. The administrative law judge (ALJ) awarded Bergstrom 34 weeks of temporary total disability compensation followed by permanent total disability compensation at the rate of $246.07 per week, not to exceed $125,000, for a permanent total general body disability. The Board set aside the ALJ's award and remanded the matter for redetermination, to include consideration of the deposition of Dr. Moeller.

The ALJ suggested that Bergstrom attempt to return to work; when she did, Spears assigned her to the same conveyor line job that she was doing when Dr. Zeiders directed her to stop working. She stated that she was unable to perform the job for more than 3 hours because of pain in her back and leg and went home. Spears then terminated her employment.

On May 22, 2007, the ALJ entered a revised award that took into account Dr. Moeller's deposition. The ALJ did not change the earlier disability determination or award amount. On a second petition for review, the Board entered an order extensively modifying the ALJ's award, finding only a 10 percent permanent partial disability to her body as a whole. The Board awarded Bergstrom 34 weeks of temporary total disability compensation, followed by 39.6 weeks of permanent partial disability.

Bergstrom filed a timely notice of appeal with the Kansas Court of Appeals, and this court assumed jurisdiction over the appeal on its own motion.

In reducing the amount of her award, the Board found that Bergstrom did not exercise good faith when she failed to perform alternate job duties that Spears offered her after her injury. She contends the Board erred when it applied a good-faith effort requirement that is not contained in K.S.A. 44-510e.

The interpretation of statutory provisions in the Workers Compensation Act is a question of law over which this court has unlimited review. *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 783, 189 P.3d 508 (2008); *Casco v. Armour Swift-Eckrich*, 283 Kan 508, 521, 154 P.3d 494 (2007).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). The legislature is presumed to have expressed its intent through the language of the statutory scheme, and when a statute is plain and unambiguous, the court must give effect to the legislative intention as expressed in the statutory language. *Hall*, 286 Kan. at 785.

When a workers compensation statute is plain and unambiguous, this court must give effect to its express language rather than de-

termine what the law should or should not be. The court will not speculate on legislative intent and will not read the statute to add something not readily found in it. If the statutory language is clear, no need exists to resort to statutory construction. *Graham v. Dokter Trucking Group*, 284 Kan. 547, 554, 161 P.3d 695 (2007).

K.S.A. 44-510e(a) reads in relevant part:

"The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding the accident, averaged together with the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker is earning after the injury . . . . An employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment as long as the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury."

In *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 284, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995), our Court of Appeals examined the legislative intent underlying K.S.A. 1988 Supp. 44-510e(a) and concluded that the statute implicitly contains a requirement that injured workers exercise good faith in attempting to mitigate their wages lost to work impairments:

"Construing K.S.A. 1988 Supp. 44-510e(a) to allow a worker to avoid the presumption of no work disability by virtue of the worker's refusal to engage in work at a comparable wage would be unreasonable where the proffered job is within the worker's ability and the worker has refused to even attempt the job. The legislature clearly intended for a worker not to receive compensation where the worker was still capable of earning nearly the same wage."

In *Copeland v. Johnson Group, Inc.*, 24 Kan. App. 2d 306, 320, 944 P.2d 179 (1997), the Court of Appeals expanded on its ruling in *Foulk*:

"In attempting to harmonize the language of K.S.A. 44-510e(a) [Furse 1993] with the principles of *Foulk*, we find the factfinder must first make a finding of whether a claimant has made a good faith effort to find appropriate employment. If such a finding is made, the difference in pre-and post-injury wages based on the actual wages can be made. This may lead to a finding of lesser wages, perhaps even zero wages, notwithstanding expert opinion to the contrary.

"If a finding is made that a good faith effort has not been made, the factfinder will have to determine an appropriate post-injury wage based on all the evidence before it, including expert testimony concerning the capacity to earn wages."

Our Court of Appeals has applied this good-faith effort requirement in a series of subsequent cases. See, *e.g.*, *Gasswint v. Superior Industries Int'l-Kansas, Inc.*, 39 Kan. App. 2d 553, 185 P.3d 284 (2008); *Robinson v. Southwestern Bell Telephone*, 39 Kan. App. 2d 342, 180 P.3d 597, *rev. denied* 286 Kan. 1179 (2008); *Deguillen v. Schwan's Food Manufacturing, Inc.*, 38 Kan. App. 2d 747, 172 P.3d 71(2007), *rev. denied* 286 Kan. 1177 (2008); *Mahan v. Clarkson Constr. Co.*, 36 Kan. App. 2d 317, 138 P.3d 790, *rev. denied* 282 Kan. 790 (2006); *Parsons v. Seaboard Farms, Inc.*, 27 Kan. App. 2d 843, 9 P.3d 591 (2000); *Lowmaster v. Modine Mfg. Co.*, 25 Kan. App. 2d 215, 219, 962 P.2d 1100, *rev. denied* 265 Kan. 885 (1998).

Most recently, however, in *Gutierrez v. Dold Foods, Inc.*, 40 Kan. App. 2d 1135, 1142-43, 199 P.3d 798 (2009), a panel of the Court of Appeals cast doubts on the viability of the good-faith effort doctrine in light of the principle that courts' should limit their interpretation of statutes to the plain language that the legislature enacted.

This court has not previously addressed the judicial addition of a good-faith effort requirement to the statutory language, but it has recently examined workers compensation statutes in light of their plain and unambiguous language. We have consistently elected to refrain from reading language into the statutes that the legislature did not include. See, *e.g.*, *Hall*, 286 Kan. at 785-88; *Graham*, 284 Kan. at 554; *Casco*, 283 Kan. at 521.

In reducing Bergstrom's award, the Board found that *Foulk* and *Copeland* "require a good faith effort be exerted when considering post-injury job searches. The Board does not find that claimant put forth a good faith effort with regard to the bar code job."

We can find nothing in the language of K.S.A. 44-510e(a) that requires an injured worker to make a good-faith effort to seek out and accept alternate employment. The legislature expressly directed a physician to look to the tasks that the employee performed during the 15-year period preceding the accident and reach an opinion of the percentage that can still be performed. That per-

centage is averaged together with the difference between the wages the worker was earning at the time of the injury and the wages the worker was earning after the injury. The legislature then placed a limitation on permanent partial general disability compensation when the employee *"is engaging* in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury." (Emphasis added.) K.S.A. 44-510e(a). The legislature did not state that the employee is required to *attempt to work* or that the employee *is capable of engaging in work* for wages equal to 90% or more of the preinjury average gross weekly wage.

*Foulk* and *Copeland* were decided contrary to the principle that an appellate court must give effect only to express statutory language, rather than speculating what the law should or should not be, and that we will not add something to a statute not readily found in it. See *Graham,* 284 Kan. at 554. In *Hall,* we pointed out that a history of incorrectly decided cases does not compel us to disregard plain statutory language and to perpetuate incorrect analysis of workers compensation statutes. 286 Kan. at 787-88. This court is not inexorably bound by precedent; it will reject rules that were originally erroneous or are no longer sound. See *Coleman v. Swift-Eckrich,* 281 Kan. 381, 388, 130 P.3d 111 (2006).

The Board's inquiry into whether Bergstrom made a good-faith effort to assume alternate employment is not supported by the plain language of the workers compensation statutes. The Kansas Workers Compensation Act does not require a worker to seek or accept such employment.

K.S.A. 44-510e(a) contains no requirement that an injured worker make a good-faith effort to seek postinjury employment to mitigate the employer's liability. *Foulk, Copeland,* and all subsequent cases that have imposed a good-faith effort requirement on injured workers are hereby disapproved.

Bergstrom's second issue—that substantial competent evidence did not support the Board's finding that she did not put forth a good-faith effort to engage in alternative employment that Spears offered her—is moot in light of our determination that the good-

faith effort requirement is not a component of the workers compensation scheme.

Finally, Bergstrom contends that the Board relied on medical opinions that were obtained in violation of procedures outlined in the Workers Compensation Act. In particular, she challenges the Board's reliance on Dr. Pollock's opinion that the task to which she was assigned when she briefly returned to work fell within her work restrictions. She contends that Dr. Zeiders was her authorized treating physician, and no proper steps were taken to change her treating physician.

Bergstrom cites no statutory or caselaw authority establishing a formal procedure for changing authorized health care professionals.

K.S.A. 44-515(a) states in relevant part:

"After an employee sustains an injury, the employee shall, upon request of the employer, submit to an examination at any reasonable time and place by any *one or more reputable health care providers, selected by the employer,* and shall so submit to an examination thereafter at intervals during the pendency of such employee's claim for compensation, upon the request of the employer, but the employee shall not be required to submit to an examination oftener than twice in any one month, unless required to do so in accordance with such orders as may be made by the director." (Emphasis added.)

K.S.A. 44-515(e) states:

(e) *Any health care provider's opinion,* whether the provider is a treating health care provider or is an examining health care provider, *regarding* a claimant's need for medical treatment, *inability to work,* prognosis, diagnosis *and disability rating shall be considered and given appropriate weight by the trier of fact* together with consideration of all other evidence." (Emphasis added.)

These statutes suggest that the Board properly considered the opinions of all the health care providers that were presented to it.

In addition, K.S.A. 2008 Supp. 44-510h(b) provides in relevant part:

"(1) If the director finds, upon application of an injured employee, that the services of the health care provider furnished as provided in subsection (a) and rendered on behalf of the injured employee are not satisfactory, the director may authorize the appointment of some other health care provider. In any such case, the employer shall submit the names of three health care providers who, if possible given the availability of local health care providers, are not associated in practice

together. The injured employee may select one from the list who shall be the authorized treating health care provider. If the injured employee is unable to obtain satisfactory services from any of the health care providers submitted by the employer under this paragraph, either party or both parties may request the director to select a treating health care provider.

"(2) Without application or approval, an employee may consult a health care provider of the employee's choice for the purpose of examination, diagnosis or treatment, but the employer shall only be liable for the fees and charges of such health care provider up to a total amount of $500. The amount allowed for such examination, diagnosis or treatment shall not be used to obtain a functional impairment rating. Any medical opinion obtained in violation of this prohibition shall not be admissible in any claim proceedings under the workers compensation act."

This statutory language shows that a claimant may seek additional or alternative medical opinions, but the record does not show that Bergstrom sought to take advantage of the statutory scheme. The statute does not place a burden on the employer to obtain formal approval in referring a claimant to additional or alternate health care providers.

The Board properly considered all the medical opinions before it; in fact, it would have constituted error for the Board to have disregarded some of those opinions. The Board did not err in following the statutory evidentiary requirements.

Reversed and remanded for further proceedings consistent with this opinion.

\* \* \*

McFARLAND, C.J., dissenting. The majority holds that K.S.A. 44-510e(a) does not require injured workers to make a good-faith effort to seek postinjury employment to mitigate wage loss. In so holding, it overrules *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995), and *Copeland v. Johnson Group, Inc.*, 24 Kan. App. 2d 306, 944 P.2d 179 (1997), in which our Court of Appeals held that K.S.A. 44-510e(a) implicitly contains a requirement that injured workers make a good-faith effort to mitigate their wage loss. The majority reasons that the Court of Appeals in *Foulk* and *Copeland* violated the plain language principle of statutory construction by reading a good-faith mitigation requirement into the statute when no such requirement appeared in the plain language. I believe the major-

ity's decision overruling a 15-year-old statutory construction for no reason other than it would have applied the rules of statutory construction differently if faced with the issue, disregards long-established principles of stare decisis without justification.

Although stare decisis is not an "inexorable command," *Payne v. Tennessee*, 501 U.S. 808, 828, 115 L. Ed. 2d 720, 111 S. Ct. 2597, *reh. denied* 501 U.S. 1277 (1991), it "is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. [Citation omitted.]" 501 U.S. at 827. "Adhering to precedent 'is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right.' " 501 U.S. at 827 (quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406, 76 L. Ed. 815, 52 S. Ct. 443 [1932] [Brandeis, J., dissenting]).

This is especially true when interpreting statutes. "Considerations of stare decisis have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and [the legislature] remains free to alter what we have done. [Citation omitted.]" *Patterson v. McLean Credit Union*, 491 U.S. 164, 172-73, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989), *superceded by statute on other grounds* Civil Rights Act of 1991, Pub. L. 102-166, 42 U.S.C. § 1981 (2006).

If the Court of Appeals in *Foulk* incorrectly read legislative intent into the statute, the legislature has had the opportunity to correct that error. That it has not done so in the 15 legislative sessions since *Foulk* mandates adherence to that precedent. It is well settled that where judicial construction of a statute has been in place for a number of years, the legislature is deemed to have approved the construction and that construction is as much a part of the statute as if embodied in it in plain and unmistakable language:

"[A] judicial construction of a statute placed upon its language by a united court for more than ten years must be deemed to have received the sanction and approval of the legislative bodies. If this court in the first instance mistook the

purpose and intent of the statute, there has been an abundant opportunity for the law-making power to give further expression to its will, and that its failure to act amounts to a ratification of the interpretation placed upon that act by this court. Courts do not write legislation. That is the function of the legislature. Our duty is to declare and apply legislative acts and to construe statutes and constitutions in accordance with the will of the law-making power where its construction becomes necessary. When such construction has been given to a law and finally established as a part thereof, it is as much a part of it as if embodied therein in plain and unmistakable language. When that situation exists, it is the province of the legislature alone to change the law if it deems advisable. The courts should not attempt it. [Citations omitted.]" *State v. One Bally Coney Island No. 21011 Gaming Table,* 174 Kan. 757, 761-62, 258 P.2d 225 (1953).

See also *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 785, 189 P.3d 508 (2008) (citing *Halsey v. Farm Bureau Mut. Ins. Co.*, 275 Kan. 129, 136, 61 P.3d 514 [2003]) (when legislature fails to modify a statute to avoid a standing judicial construction of that statute, legislature is presumed to agree with court's interpretation); *State v. Rollins*, 264 Kan. 466, 474, 957 P.2d 438 (1998) (legislature deemed to have adopted judicial construction that has been in place for 126 years); *Windle v. Wire*, 179 Kan. 239, 242, 294 P.2d 213 (1956) (fact that legislature, in 15 regular sessions, had not modified court's construction of worthless check statute held to indicate legislature was satisfied with that interpretation).

This fact is even more compelling in the workers compensation context, for there is, perhaps, no other statutory scheme subject to such constant legislative scrutiny than our Workers Compensation Act. For example, looking just to the 2005-2006 legislative session, over 80 bills related to workers compensation were introduced. See Kansas Legislature Website (bill subject search): http://www.kslegislature.org/legsrv-bill Subj/searchKeyword.do (visited July 10, 2009). There is no possibility that *Foulk*'s statutory construction went unnoticed by the legislature. Probably no other area of legislation is subject to more scrutiny by knowledgeable professionals than is workers compensation law. Employers and their insurers, attorneys specializing in representing injured workers, and labor organizations each keep a close watch on workers compensation statutes and proposed amendments thereto. Proposed changes are hard fought issues and frequently are subject to com-

promises. Nothing just slips by unnoticed. With this near-constant reexamination of our workers compensation statutes, the fact the legislature has not modified *Foulk* allows more than the mere inference of legislative agreement with our interpretation. It can be said with virtual certainty that the legislature agrees with its statutory construction.

Not only has the majority failed to consider the fact that the legislature has, in effect, adopted the good-faith mitigation rule as set forth in *Foulk* 15 years ago, it fails to give due consideration to any other factors relevant to the principle of stare decisis.

Before overruling precedent, the court should consider why departure from the rule of stare decisis is justified. Relevant factors include:

"(1) whether the decision sought to be overturned has proven to be intolerable simply in defying practical 'workability'; (2) whether the decision is subject to a kind of reliance that would lend a special hardship to the consequences of overruling and add inequity to the cost of repudiation; (3) whether related principles of law have so far developed as to have left the rule established by the old decision no more than a remnant of abandoned doctrine; and (4) whether the facts have so changed, or have come to be seen so differently, as to have robbed the rule established by the old decision of significant application or justification." *State v. Marsh*, 278 Kan. 520, 579, 102 P.3d 445 (2004) (McFarland, C.J., dissenting), *overruled on unrelated grounds Kansas v. Marsh*, 548 U.S. 163, 165 L. Ed. 2d 429, 126 S. Ct. 2516 (2006) (citing *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 854-55, 120 L. Ed. 2d 674, 112 S. Ct. 2791 [1992]).

Here, there is not even a suggestion that the good-faith mitigation rule is unworkable or unsound in any way. To the contrary, as noted above, it has been implicitly adopted by the legislature and has been a working part of our workers compensation system for 15 years. Additionally, there is no showing that the rule has been abandoned by subsequent developments in the law, and the majority does not so find.

There is also no showing or determination that the "premises of fact have so far changed [since the opinion] as to render its central holding somehow irrelevant or unjustifiable in dealing with the issue it addressed." *Planned Parenthood*, 505 U.S. at 855. The premises underlying the decision in *Foulk* have not changed. K.S.A. 44-510e(a) still limits benefits for employees earning nearly

as much as they were making at the time of the injury. Moreover, the *Foulk* court's construction is as valid today as it was in 1994:

"[I]t would be unreasonable for this court to conclude that the legislature intended to encourage workers to merely sit at home, refuse to work, and take advantage of the workers compensation system. To construe K.S.A. 1988 Supp. 44-510e(a) [to allow a worker to avoid the presumption of no work disability by refusing to engage in work at a comparable wage] would be to reward workers for their refusal to accept a position within their capabilities at a comparable wage." *Foulk*, 20 Kan. App. 2d at 284.

The majority has wholly failed to consider whether the *Foulk* rule has been " 'subject to a kind of reliance that would lend a special hardship to the consequences of overruling and add inequity to the cost of repudiation.' " See *Marsh*, 278 Kan. at 580 (McFarland, C.J. dissenting) (quoting *Planned Parenthood*, 505 U.S. at 854). " 'The inquiry into reliance counts the cost of a rule's repudiation as it would fall on those who have relied reasonably on the rule's continued application.' " 278 Kan. at 580 (McFarland, C.J., dissenting) (quoting *Planned Parenthood*, 505 U.S. at 855).

Reliance consideration is an especially significant factor in workers compensation matters. Huge numbers of such cases are processed each year. For illustration, the following statistics are included. In 2006, the Division of Workers Compensation processed 16,185 applications for hearings; 7,194 hearings were held before administrative law judges; 594 applications for review were filed with the Workers Compensation Board; and the Workers Compensation Board issued 512 decisions. See Kansas Department of Labor Division of Workers Compensation, 32nd Annual Statistical Report Fiscal Year 2006, pp. 3, 17, 18 (January 2007). Relatively few decisions are appealed to the court system, and even fewer reach an appellate court.

Under such circumstances there is an exceptionally high reliance interest that participants in the workers compensation system have in the stability and predictability in the law that the policy of stare decisis provides. Yet the majority fails to consider such reliance in cavalierly overruling a 15-year-old statutory construction for no

reason other than it would have applied the rules of statutory construction differently if faced with the issue in the first instance.

For these reasons, I dissent.