(230 P.3d 771)
No. 102,307

KAREN C. ROLES, *Claimant/Appellee*, v. THE BOEING COMPANY, *Respondent/Appellant*, and INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, *Insurance Carrier/Appellant.*

Opinion filed April 15, 2010.

*Kim R. Martens* and *Tucker L. Poling,* of Hite, Fanning & Honeyman L.L.P., of Wichita, for appellants.

*Michael L. Snider,* of Snider & Seiwert, L.L.C., of Wichita, for appellee.

BEFORE STANDRIDGE, P.J., PIERRON J., and BUKATY, S.J.

PIERRON, J.: The Boeing Company and Insurance Company of the State of Pennsylvania (Boeing) appeal the March 30, 2009, order of the Workers Compensation Board (Board). Boeing argues that the Board erred in ordering a final award of $106,339.65 in medical compensation to Karen C. Roles. In addition, Boeing argues that the Board erred in awarding Roles post-award medical benefits for expenses incurred outside of the 6-month relation back period delineated in K.S.A. 2009 Supp. 44-510k.

Roles began working for Boeing on January 21, 1975. While working for Boeing, Roles has had a long history of respiratory problems. In 1979, she was diagnosed with bronchiectasis. Surgery was required, and Roles underwent a left lower lobectomy. Despite the surgery, Roles required numerous inpatient and outpatient medical treatments for respiratory problems throughout the 1980's and 1990's. As a result of these continuing problems, Roles was taken off work from 1991-1996.

On February 22, 1995, Roles settled a claim for workers compensation benefits against Boeing. As a result of this settlement, premised upon an allegation of occupationally induced asthma, Boeing paid Roles a lump sum of $61,500, as well as $63,494 in

temporary total disability benefits (228 weeks). In addition, Boeing paid Roles' medical expenses in the amount of $76,680.34. Under the terms of the settlement agreement, Roles waived her right to any future medical compensation.

While Roles was off work, her respiratory symptoms improved. As a consequence of these improvements, she was released to work in a smoke-, chemical-, and odor-free environment not involving physical labor. On May 10, 1996, Roles returned to work with Boeing as a lead person in Industrial Park Building-3 (IPB-3).

In 1997, Roles moved to a different area of IPB-3, where she was exposed to chemicals contained in cleaning solvents and fumes from mini-riveters. In 2000, she was moved to Industrial Park Building-1 (IPB-1), which lacked air conditioning and was over-crowded with employees and machines.

In 1999, Roles started developing upper respiratory problems, with irritation in her throat and upper chest area. After seeking medical treatment, Roles was tentatively diagnosed with vocal cord dysfunction as well as asthma, gastroesophageal reflux, and rhino sinusitis. Roles continued to receive medical treatment until at least 2001.

On June 30, 2001, Roles took a medical leave of absence from Boeing to obtain carpal tunnel release surgery. She returned on July 16, 2001, and worked until July 18, 2001. On July 18, 2001, Roles again began having breathing problems. Roles' last day of work was July 18, 2001. She was unable to return because of her respiratory problems. After July 18, 2001, Roles continued to require hospitalization and medical treatment for these respiratory problems. Ultimately, she was diagnosed with interstitial lung disease and has significant fibrosis of the lungs. As a consequence, Roles is completely disabled from work and has lung function of approximately 20%.

In September 2001, Roles filed an application for a preliminary hearing to determine the compensability of her exposure to chemicals and contaminants in her work environment at Boeing as of July 16, 2001, and each day worked thereafter. In April 2002, the administrative law judge (ALJ) held a preliminary hearing to consider Roles' claim for workers compensation benefits. The ALJ

denied Roles' claim after finding that her vocal cord dysfunction was a new injury that arose after her 1995 settlement with Boeing but that the injury was not compensable because there was no toxological link between Roles' injury and her work environment. After the denial of her claim, Roles timely filed an application for review.

In October 2002, the Board reversed the ALJ's preliminary hearing order. The Board agreed that Roles suffered a new and separate injury of vocal cord dysfunction after her February 1995 settlement agreement. However, contrary to the ALJ, the Board found that the vocal cord dysfunction was caused by Roles' exposure to chemical irritants in the workplace. As a consequence, the Board ordered Boeing to "pay as authorized medical treatment all reasonable and necessary medical expenses, in accordance with the medical fee schedule, incurred since July 18, 2001, for the treatment of Roles' work-related respiratory injuries." Pursuant to the Board's preliminary order, Boeing paid Roles' medical expenses in the amount of $106,339.65.

After lengthy preliminary proceedings, the ALJ held a final award hearing in November 2005. At the hearing, Roles testified regarding her employment with Boeing as well as her medical history. However, she never testified or introduced evidence regarding the bills submitted under the preliminary hearing order or their relation to her illness. Deposition testimony of Dr. Allen J. Parmet, who independently evaluated Roles' medical records, also confirmed that a few medical expenses submitted for payment by Boeing were unrelated to her occupational exposure at Boeing.

On October 30, 2006, the ALJ entered its final award finding that Roles had suffered a new chemical exposure through her last day worked at Boeing, July 18, 2001. As a result of that exposure, the ALJ found that she was permanently and totally disabled. Although the ALJ's award noted that Boeing had paid Roles' medical expenses in the amount of $106,339.65, for some unknown reason the ALJ made no further ruling regarding the compensability of these expenses. As to Roles' eligibility for future medical expenses, the ALJ ordered that Roles could only be awarded future medical

benefits "upon proper application to and approval by the Director of the Division of Workers Compensation."

After the ALJ's final award, both Roles and Boeing timely filed applications for review to the Board. In April 2007, the Board issued an order confirming that Roles was permanently and totally disabled from any type of employment. As to the compensability of Roles' medical expenses, the Board remanded the matter to the ALJ for consideration of "whether the incurred medical bills are related to any chemical exposure, and more specifically, whether the bills were reasonable and necessary to cure and relieve claimant from the effects of her injuries suffered while in respondent's employment."

Pursuant to the Board's directive, the ALJ held a remand hearing in July 2007. Although the Board's order only permitted the ALJ to consider the record presented at the final award hearing, the ALJ permitted Roles, over Boeing's objection, to testify regarding the submitted medical expenses.

During this hearing, Roles testified that most of the bills submitted to Boeing for payment were related to her lung and respiratory exposure. However, she had not brought the medical bills to the hearing for examination and, therefore, could not conclusively testify that the bills submitted to Boeing did not include bills for unrelated medical expenses. During the course of her testimony, Roles admitted with certainty that at least one bill, a charge for a pap smear, was unrelated to her occupational exposure and agreed to remove it from consideration. At the end of the remand hearing, the ALJ took the matter under advisement but never issued a final order regarding the compensability of these medical bills. We do not know why.

On July 6, 2007, shortly after the remand hearing, Roles filed an application for post-award medical expenses. The application sought reimbursement for post-award medical treatment incurred after Roles' February 1, 2006, terminal date (the deadline after which her medical expenses would no longer be considered for purposes of the final award hearing).

In November 2007, the parties filed a joint stipulation for the purpose of the post-award medical hearing. In the stipulation, the

parties agreed solely for the purposes of the November 29, 2007, post-award medical hearing that if the ALJ found Roles had properly submitted medical expenses within the requisite time period, then the submitted expenses were reasonable and customary charges related to Roles' work-related occupational disease. As a consequence of the stipulation, the only issue for consideration by the ALJ was whether Roles timely submitted her application for post-award medicals within the 6-month relation back period.

On June 2, 2008, the ALJ denied Roles' application for post-award medical compensation, finding that it was not timely filed because all of the bills contained in the post-award record related back more than 6 months from the time of filing. In addition, the ALJ also made findings in relation to the issues presented at the remand hearing.

On March 30, 2009, the Board issued an order reviewing the ALJ's June 2, 2008, post-award medical award. In the order, the Board considered the following issues: (1) Did the ALJ err in finding that the $106,339.65 in previously paid medical benefits were necessary and reasonable based on the evidence in the record? and (2) Did the ALJ err in denying payment of the post-award medical expenses contained in the parties' stipulation?

As to the first of these issues (relating to the $106,339.65 in previously paid medical benefits), the Board found that although the ALJ failed to issue a specific order on these medical expenses, judicial economy required that the Board issue a decision without an additional remand. As a consequence, the Board, citing K.S.A. 44-510j, found that although Boeing argued it was forced to pay many of the bills "under the gun" by threats of civil penalties and statutory interest, the fact that many of the medical expenses paid by Boeing were reduced from the original charges (from $146,234.85 to $106,339.65) meant that Boeing had sufficient time for negotiations. By extension, the Board reasoned that Boeing also had time to challenge the compensability of the medical bills. Consequently, the Board found that Boeing's failure to contest the bills under the statutory framework delineated in K.S.A. 44-510j made its argument disingenuous. For this reason, the Board affirmed the ALJ's order.

As for the second issue—the compensability of the expenses contained in the post-award medical award—the Board found that the ALJ erred in denying Roles' application for post-award medical expenses. Deferring to K.S.A. 2009 Supp. 44-510k, the Board found that although the statute prohibits a post-award medical award for expenses incurred more than 6 months before the filing of the post-award application, Roles was not applying for medical treatment. Instead, she was seeking payment for medical treatment provided under the supervision of her authorized treating physician. Therefore, the Board found that K.S.A. 2009 Supp. 44-510k did not impose a 6-month bar for medical treatment with the authorized treating physician. After making this finding, the Board ordered Boeing to pay the bills delineated in the parties' stipulation with two exceptions.

After the Board's March 30, 2009, order, Boeing timely filed a petition for judicial review.

Boeing's first argument on appeal is that the Board erred in declining to reimburse Boeing the $106,339.65 in medical compensation paid under the preliminary order. To this end, Boeing advances two arguments. First, Boeing argues that Roles failed to meet her burden in proving her entitlement to the requested medical payments. Second, Boeing argues that the Board erred in interpreting K.S.A. 44-510j as precluding the subsequent reimbursement of medical bills not initially disputed to the medical provider.

Under the Workers Compensation Act (Act), if an employee suffers personal injury by accident arising out of and in the course of employment, the employer shall be liable to pay compensation to the employee in accordance with the statutory framework. K.S.A. 2009 Supp. 44-501(a); *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 819, 104 P.3d 378 (2005). This includes provision of "services of a health care provider, and such medical, surgical and hospital treatment . . . as may be reasonably necessary to cure and relieve the employee from the effects of the injury." K.S.A. 2009 Supp. 44-510h(a).

In order to fall within these statutory protections, the burden of proof lies with the claimant to establish his or her right to compensation by proving various conditions on which that right de-

pends. K.S.A. 2009 Supp. 44-501(a); *Schmidtlien Electric*, 278 Kan. at 819-20. " 'Burden of proof' means the burden of a party to persuade the trier of facts by a preponderance of the credible evidence that such party's position on an issue is more probably true than not true on the basis of the whole record." K.S.A. 2009 Supp. 44-508(g). "Once the claimant has met his or her burden of proving a right to compensation, the employer has the burden of proving relief from that liability through [a statutory defense or exception]." *Foos v. Terminix*, 277 Kan. 687, 693, 89 P.3d 546 (2004).

In determining whether the parties have sustained their requisite burdens of proof, an appellate court reviews the Board's determinations of facts to verify if such findings are "supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as whole, which includes the agency record for judicial review." K.S.A. 2009 Supp. 77-621(c)(7). Within this context:

" '[I]n light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 2009 Supp. 77-621(d).

Although the statute does not define substantial evidence, case law has long held that it is "such evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.]" *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 363, 212 P.3d 239 (2009). This new evidentiary standard of review is similar to the old workers compensation standard of review, except that K.S.A. 2009 Supp. 77-621(d) now permits us to look more completely at the record in determining whether substantial evidence supports the agency decision, including evidence both supporting and detracting from an agency's findings. 42 Kan. App. 2d at 362-63. As always, the party challenging

the agency action bears the burden of proving its invalidity. K.S.A. 2009 Supp. 77-621(a).

In order to invoke the compensation available under the Act, an employee must file an application for a preliminary hearing in accordance with K.S.A. 44-534a. During the preliminary hearing, the ALJ will summarily determine whether medical treatment should be furnished to the employee and whether the employee is entitled to payment of temporary total disability payments. K.S.A. 44-534a. The findings from this preliminary hearing are subject to a full hearing on the claim. K.S.A. 44-534a(a)(2).

When authorized by a preliminary award, a health care provider often then bills an employer and its insurance carrier for the medical costs of treating an injured employee. If the employer challenges the compensability of any of the medical bills preliminary paid to medical providers, it may seek subsequent reimbursement from the workers compensation fund:

"If compensation in the form of medical benefits or temporary total disability benefits has been paid by the employer or the employer's insurance carrier either voluntarily or pursuant to an award entered under this section and, upon a full hearing on the claim, the amount of compensation to which the employee is entitled is found to be less than the amount of compensation paid or is totally disallowed, the employer and the employer's insurance carrier shall be reimbursed from the workers compensation fund established in K.S.A. 44-566a and amendments thereto, for all amounts of compensation so paid which are in excess of the amount of compensation the employee is entitled to less any amount deducted from additional disability benefits due the employee pursuant to subsection (c) of K.S.A. 44-525, and amendments thereto, as determined in the full hearing on the claim." K.S.A. 44-534a(b).

Therefore, at the preliminary hearing stage, the Act "provides no effective method of litigating the question of whether the medical expenses being billed and paid are necessary and reasonable until after the claim has been disposed of." *Beisel v. Boeing Co.*, 23 Kan. App. 2d 572, 575, 932 P.2d 1050 (1997). This framework is designed "to assure that in the first instance treatment for an injured worker takes priority while the claim is in progress." 23 Kan. App. 2d at 575. The preliminary hearing framework "temporarily secure[s] prompt compensation while the parties proceed with a more thorough exposition of the evidence. [Citation omit-

ted.]" *Butera v. Fluor Daniel Constr. Corp.*, 28 Kan. App. 2d 542, 544, 18 P.3d 278, *rev. denied* 271 Kan. 1035 (2001).

The summary and preliminary nature of this framework sometimes requires an employer to pay medical benefits that are not related to an employee's occupational injury. In this scenario, the Workers Compensation Fund (Fund) is statutorily required to reimburse the employer for medical benefits paid " 'in excess of the amount of compensation the employee is entitled to as determined in the full hearing on the claim.' " *Beisel*, 23 Kan. App. 2d at 575 (quoting K.S.A. 44-534a[b]). Stated another way, under K.S.A. 44-534a(b), the Fund is required to reimburse an employer for medical benefits provided to an employee that are deemed to be unreasonable or unnecessary to treatment of the occupational injury as determined at a full hearing on the claim. 23 Kan. App. 2d at 575-76. Within this context, a full hearing "means an exploration of the issues resulting in the ultimate decision." *Schmidtlien*, 278 Kan. at 825. This is normally the hearing held after the preliminary hearing. See *Sawyer v. Oldham's Farm Sausage Co.*, 246 Kan. 327, 333, 787 P.2d 697 (1990).

Although it is clear that an employer is entitled to reimbursement for payment of unreasonable or unnecessary medical compensation, the procedure for recovering such wrongfully paid compensation is less settled. In *Beisel*, this court held that until the Act established a system of utilization review for medical charges, K.S.A. 44-534a was the only procedure for an employer challenging the compensability of an employee's medical expenses:

> "In summary, we have an employer and its insurance carrier who appear to have the absolute right to be reimbursed for unnecessary medical expenditures. K.S.A. 44-534a at present provides the only practical method by which this issue can be tried and put to rest. The procedure the Board concluded should have been used does not exist. Under the circumstances, we hold that 44-534a is controlling and may be utilized by an employer and its insurance carrier to recover medical benefits paid on behalf of a claimant which have been determined to be unnecessary and unreasonable. The Board's order to the contrary is reversed." *Beisel*, 23 Kan. App. 2d at 579.

*Beisel* was decided in 1997. The Act still contains no utilization procedure for challenging provided medical benefits. Although the

legislature has passed an amended statute, K.S.A. 44-510j(d), which outlines a utilization framework, the statute still awaits the workers compensation director's efforts to "develop and implement, or contract with a qualified entity to develop and implement, utilization review procedures relating to the services rendered by providers and facility, which services are paid for in whole or in part pursuant to the workers compensation act." Because the needed utilization review procedures have still not been made workable, K.S.A. 44-534a(b) still provides the sole means by which an employer can seek reimbursement for excess payments of compensation. We do not know why this has not been done. See *Kimber v. U.S.D. No. 418*, 24 Kan. App. 2d 280, 283, 944 P.2d 169, *rev. denied* 263 Kan. 886 (1997); *Beisel*, 23 Kan. App. 2d at 579. Within this framework, the employer is entitled to a full hearing on the merits to challenge the provided medical compensation paid pursuant to a preliminary order. See K.S.A. 44-534a(b); *Schmidtlien*, 278 Kan. at 825;. *Sawyer*, 246 Kan. at 333.

After the preliminary hearing stage, the determination of the employee's rights under the Act proceeds to a final evidentiary hearing. K.S.A. 2009 Supp. 44-523. Prior to this hearing, the ALJ is required to set a terminal date for the parties to submit evidence in support of their respective positions. K.S.A. 2009 Supp. 44-523(b). Any evidence submitted after this terminal date cannot be considered as part of the final evidentiary record. See *Hargett v W.A. Dunbar*, Docket No. 173,294, 1998 WL 100151, at *1-2 (Kan. Work. Comp. App. Bd. 1998); *Waterhouse v. Pechin Construction, Inc.*, Docket No. 172,404, 1997 WL 762964, at *1 (Kan. Work. Comp. App. Bd. 1997).

In the case at bar, Roles filed an application for preliminary hearing in September 2001. Ultimately, the Board found her injury compensable and ordered Boeing to pay all of her reasonable and necessary medical expenses. Under this order, Boeing paid medical expenses in the amount of $106,339.65.

At the first full hearing after the preliminary hearing (the final evidentiary award hearing), Boeing denied that Roles suffered an accident out of the course of her employment and requested reimbursement for the medical expenses paid under the preliminary

hearing order. At this final award hearing, Roles testified regarding her employment with Boeing as well as her medical history. However, she never testified or introduced evidence regarding the submitted medical bills or their relation to her illness. In addition, Dr. Allen J. Parmet, who independently evaluated Roles' medical records, testified that certain medical expenses submitted for payment by Boeing were unrelated to her occupational exposure at Boeing. As a result of the lack of conclusive evidence relating to the necessity and compensability of the submitted medical expenses, Boeing objected to being ordered to pay such expenses.

On October 30, 2006, the ALJ entered its final award. In the award, the ALJ found that Roles had suffered a new chemical exposure through her last day worked at Boeing (July 18, 2001). As a result of that exposure, the ALJ found that Roles was permanently and totally disabled and awarded her compensation accordingly. Although the ALJ's award noted that Boeing paid Roles' medical expenses in the amount of $106,339.65, it made no further ruling regarding the compensability of these expenses. In April 2007, the Board remanded the issue of the compensability of Roles' medical expenses back to the ALJ for consideration of the evidentiary record:

"Respondent disputes claimant's entitlement to past and current medical benefits. The Award of the ALJ fails to discuss these issues, even though respondent raised the issues at the regular hearing with the admission of an exhibit showing a total paid for past medical treatment to be $106,339.65 and memorialized the disputed issues in respondent's submission letter, dated May 12, 2006, filed with the Kansas Division of Workers Compensation on May 12, 2006. Respondent disputes that claimant has carried her burden of proof of entitlement to payment of specific medical bills, whether the incurred medical bills are related to any chemical exposure, and more specifically, whether the bills were reasonable and necessary to cure and relieve claimant from the effects of her injuries suffered while in respondent's employment. The Board is limited under K.S.A. 2006 Supp. 44-551 to reviewing issues presented to and decided by an administrative law judge. As the ALJ failed to address these issues in the Award, a remand of the matter to the ALJ for a determination of these medically related issues is necessary. The Board, therefore, remands this matter to the ALJ for a determination of the necessity and reasonableness of the medically related expenses as claimed in this matter and based on the exhibits and evidence contained in the record."

Pursuant to the Board's directive, the ALJ held a remand hearing in July 2007 to consider the compensability of Roles' medical expenses based on a review of the exhibits and evidence contained in the final evidentiary record. Although the Board's order only permitted the ALJ to consider the record presented at the final award hearing, the ALJ permitted Roles, over Boeing's objection, to testify regarding the submitted medical expenses. This evidence was taken after Roles' terminal date of February 2006.

At the remand hearing, Roles testified that most of the bills submitted to Boeing for payment were related to her lung and respiratory exposure. However, Roles did not bring the medical bills to the hearing for examination and, therefore, could not conclusively testify that the bills submitted to Boeing did not include bills for unrelated medical expenses. During the course of her testimony, Roles admitted with certainty that at least one bill, a charge for a pap smear, was unrelated to her occupational exposure and agreed to remove it from consideration. At the end of the remand hearing, the ALJ took the matter under advisement but never issued a final order regarding the issue of medical expense compensability. Later, during the post-award hearing, the ALJ found that Roles met her burden in providing that "the medical treatment she has incurred [is] necessary and reasonable based on the evidence contained in the record and finds no reason to reimburse Respondent for any of the $106,339.65 previously paid in this matter."

After the ALJ's decision, both Boeing and Roles filed timely applications for review to the Board. The Board reviewed the ALJ's decision, first considering whether the ALJ erred in finding that the $106,339.65 in previously paid medical benefits were necessary and reasonable based on the evidentiary record. In doing so, the Board noted that although the ALJ failed to issue a specific order on these medical expenses, judicial economy required that the Board issue a decision without an additional remand. In doing so, the Board never considered whether Roles fulfilled her burden in proving the compensability of her medical expenses, instead finding that Boeing's failure to challenge the medical bills within the framework delineated in K.S.A. 44-510j barred its subsequent re-

quest for reimbursement. Therefore, the Board affirmed the ALJ's order barring Boeing's reimbursement of the $106,339.65 in previously paid medical benefits.

Under K.S.A. 44-534a(b), Boeing was entitled to a full hearing after the preliminary hearing to litigate the issue of whether the $106,339.65 it paid for Roles' medical expenses was subject to reimbursement from the Fund. If a portion of the medical benefits paid were unnecessary and not related to Roles' occupational injury, Boeing was not responsible for their payment under the Act. Roles had the burden of proving her entitlement to the medical benefits paid by Boeing under the preliminary order. See K.S.A. 2009 Supp. 44-501(a); *Schmidtlien Electric*, 278 Kan. at 819-20.

Despite Boeing's continual objection to the compensability of Roles' medical expenses, the ALJ never inquired into the reasonableness and relation of these expenses to Roles' occupational injury. Even after the Board remanded the case to the ALJ for a hearing on this matter, the ALJ failed to enter a final order on this issue, instead combining the remand hearing with Roles' post-award medical hearing. At the post-award medical hearing, the ALJ impermissibly considered evidence beyond the case's terminal date (Roles' testimony) and thereby outside of the final award evidentiary record. However, even after considering this improper evidence, the ALJ still failed to require Roles to introduce into evidence or explain the medical bills in controversy.

In the Board's final judgment in this case, the Board recognized that the ALJ never properly considered the compensability of the medical expenses paid under the preliminary hearing order. Nonetheless, the Board never examined the sufficiency of the evidence in the record relating to these medical expenses. Instead, the Board summarily denied Boeing's request for reimbursement on the premise that Boeing's failure to dispute the bills with the medical providers barred its subsequent request for reimbursement.

At every stage of the administrative proceedings in this case, the ALJ and the Board failed to require Roles to produce evidence of the compensability of medical expenses paid by Boeing under the preliminary order. Boeing never received its required full hearing on the issue. Because it did not, this court cannot inquire as to

whether Roles sustained her burden of proof on the compensability issue. Consequently, we cannot consider whether substantial evidence supports the Board's findings. Therefore, we must either remand the case to the Board to make adequate findings on the compensability of these expenses or determine based upon the record whether Roles fulfilled her burden in proving her entitlement to the medical compensation paid under the preliminary hearing order.

However, prior to doing so, we will first consider whether Boeing's failure to challenge the bills in accordance with K.S.A. 44-510j renders these inquiries moot by precluding Boeing's subsequent request for reimbursement.

Boeing argues that the Board erred in finding that the failure to dispute Roles' medical expenses during the preliminary proceedings bars their reimbursement because K.S.A. 44-510j is not intended to adjudicate the compensability of medical bills as between the employee or employer. Instead, Boeing argues that K.S.A. 44-510j only provides a dispute resolution procedure between an employer and a medical service provider.

Boeing's challenge requires this court to interpret K.S.A. 44-510j. Statutory interpretation is a question of law over which an appellate court has unlimited review. *Bergstrom v. Spears Mfg. Co.*, 289 Kan. 605, 607, 214 P.3d 678 (2009); *State v. Jefferson*, 287 Kan. 28, 33, 194 P.3d 557 (2008). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Hall*, 286 Kan. at 785. Therefore, an appellate court's first task is to " 'ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning.' [Citation omitted.]" *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009).

Within the context of workers compensation, the Kansas Supreme Court has emphasized that when a workers compensation statute is plain and unambiguous, an appellate court must give effect to the statute's express language rather than determine what the law should or should not be. An appellate court should not "speculate on legislative intent and will not read the statute to add something not readily found in it. If the statutory language is clear,

no need exists to resort to statutory construction. [Citation omitted.]" *Bergstrom*, 289 Kan. at 607-08.

On the other hand, under the doctrine of operative construction, the Board's interpretation of workers compensation statutes is entitled to judicial deference. Under this principle, "[i]f there is a rational basis for the Board's interpretation, it should be upheld upon judicial review. However, the Board's determination on questions of law is not conclusive and, though persuasive, is not binding on a court." *Higgins v. Abilene Machine, Inc.*, 38 Kan. App. 2d 735, 737, 172 P.3d 1201 (2008), *aff'd on other ground* 288 Kan. 359, 204 P.3d 1156 (2009). The party challenging the Board's interpretation bears the burden of proving its invalidity. 38 Kan. App. 2d at 737.

K.S.A. 44-510j provides a framework wherein an employer who "disputes all or a portion of a bill for services rendered for the care and treatment of an employee" may dispute the bill. Pursuant to K.S.A. 44-510j(a), within 30 days of receipt of a bill, the employer shall inform the provider of the specific reason for refusing payment or adjusting the bill. In relevant part, K.S.A. 44-510j provides the following dispute resolution framework:

"(a) (1) The employer or carrier shall notify the service provider within 30 days of receipt of the bill of the specific reason for refusing payment or adjusting the bill. Such notice shall inform the service provider that additional information may be submitted with the bill and reconsideration of the bill may be requested. The provider shall send any request for reconsideration within 30 days of receiving written notice of the bill dispute. If the employer or carrier continues to dispute all or a portion of the bill after receiving additional information from the provider, the employer, carrier or provider may apply for an informal hearing before the director.

"(2) If a provider sends a bill to such employer or carrier and receives no response within 30 days as allowed in subsection (a) and if a provider sends a second bill and receives no response within 60 days of the date the provider sent the first bill, the provider may apply for an informal hearing before the director.

"(3) Payments shall not be delayed beyond 60 days for any amounts not in dispute. Acceptance by any provider of a payment amount which is less than the full amount charged for the services shall not affect the right to have a review of the claim for the outstanding or remaining amounts."

As the plain language of K.S.A. 44-510j indicates, the statute provides a framework for resolving medical bill disputes as between

employers and medical providers. The statute does not provide an explicit framework for medical bill disputes as between employers and employees. *Daniels v. Americold Corporation,* Docket No. 189,238, 2007 WL 2586152, at *6 (Kan. Work. Comp. App. Bd. 2007); *Snow v. USD 261,* Docket No. 253,300, 2005 WL 3030731, at *2 (Kan. Work. Comp. App. Bd. 2005); *Palmer v. DCCCA,* Docket No. 248,202, 2003 WL 1918540, at *1-2 (Kan. Work. Comp. App. Bd. 2003). This is likely because the determination of whether treatment is reasonable and necessary to cure or relieve the effects of the accidental injury comprising the underlying award lies within the firm jurisdiction of the ALJ. *Daniels,* 2007 WL 25861521, at *5-6.

Moreover, in *Beisel,* 23 Kan. App. 2d at 579, this court found that until the Act contains a workable procedure for utilization review of medical bills, K.S.A. 44-534a(b) is the only procedural vehicle for challenging preliminary medical compensation as unreasonable and unnecessary. Since *Beisel* was decided in 1997, the Act still contains no utilization procedure for challenging provided medical benefits. See K.S.A. 44-510j(d). Therefore, for now, K.S.A. 44-534a(b) provides the sole means by which an employer can seek reimbursement for excess payments of compensation. See *Kimber,* 24 Kan. App. 2d at 283; *Beisel,* 23 Kan. App. 2d at 579. In seeking reimbursement within this framework, the employer is entitled to a full hearing on the merits to challenge the medical compensation paid under a preliminary order. See K.S.A. 44-534a(b); *Schmidt-lien,* 278 Kan. at 825; *Sawyer,* 246 Kan. at 333.

A plain reading of K.S.A. 44-510j and *Beisel's* interpretation of K.S.A. 44-534a(b) requires us to find, contrary to the Board, that Boeing's failure to challenge the medical expenses ordered at the preliminary hearing does not preclude its subsequent reimbursement for any unnecessary or unreasonable expenses. In fact, as *Beisel* determined, K.S.A. 44-534a(b) is the proper procedural vehicle for contesting such expenses and requires a full hearing on the issue of compensability. It was the province of the ALJ and the Board to conduct the required full hearing to determine compensability. Because neither did so, we may remand the case for the Board to make adequate findings on this issue.

However, that does not appear to be necessary. Based on the final evidentiary record (which necessarily excludes Roles' testimony at the remand hearing), Roles failed to meet her burden in proving the compensability of the expenses paid under the preliminary order. We should, therefore, award Boeing compensation in the amount of $106,339.65. At the final award evidentiary hearing, Roles never testified or introduced evidence regarding the bills or their relation to her illness. During that hearing, other deposition testimony established that certain medical expenses paid under the preliminary hearing order were indeed unrelated to her occupational exposure at Boeing. For these reasons, we can bypass yet another remand to the Board and enter a finding that Roles failed to fulfill her burden in demonstrating the compensability of the medical compensation paid under the preliminary hearing order, and we do so.

Since this rather complex matter may be reviewed by our Supreme Court, we will also deal with Boeing's second argument that the Board erred in its interpretation and application of K.S.A. 2009 Supp. 44-510k and in its consequent reversal of the ALJ's decision denying Roles' application for post-award medical benefits. Boeing's argument requires us to interpret the post-award medical compensation statute, K.S.A. 2009 Supp. 44-510k. This is an issue of statutory interpretation, a matter of law over which appellate courts exercise unlimited review in accordance with the principles of statutory construction delineated above. See *Bergstrom*, 289 Kan. at 607-08.

On appeal, Boeing argues the Board had no jurisdiction to award Roles post-award medical benefits because all the bills she submitted were for treatment incurred prior to January 6, 2007, 6 months prior to her July 6, 2007, application for post-award medical benefits. As a consequence, Boeing argues that Roles was statutorily barred from receiving post-award medical compensation for these bills because they were incurred outside of the 6-month relation back period delineated in K.S.A. 2009 Supp. 44-510k.

Under K.S.A. 2009 Supp. 44-510k(a), at any time after an award for compensation, the employee may make application for a hearing for an award for further medical care if the ALJ "finds that the

care is necessary to cure or relieve the effects of the accidental injury which was the subject of the underlying award." After receiving such an application, the ALJ "shall have authority to award medical treatment relating back to the entry of the underlying award, but in no event shall such medical treatment relate back more than six months following the filing of such application for post-award medical treatment." K.S.A. 2009 Supp. 44-510k(b).

In interpreting 44-510k(b), the ALJ found that Roles' application for post-award medical benefits was not timely filed because all of the bills contained in the post-award record related back more than 6 months from the time of filing. The Board reversed the ALJ's order. Initially, the Board acknowledged that 44-510k(b) prohibits an award of medical treatment relating back more than 6 months before the filing of the post-award medical compensation application. However, the Board distinguished that scenario from the case at bar, where Roles was not applying for medical treatment, but rather "requesting payment for medical treatment provided under the supervision of the authorized treating physician, Dr. Brodnan," who was appointed as Roles' authorized physician since at least February 15, 2005.

While not citing to any authority, the Board made the following finding regarding Roles' right to post-award medical compensation:

"The Board finds respondent's position on this issue and the ruling of the ALJ are misplaced. There is no six-month rule under K.S.A. 44-510k for ongoing medical treatment with the authorized treating physician. The language of that statute applies to a claimant's request for newly authorized medical treatment, post-award. There was no need for claimant to request medical treatment here, as it was already being furnished by the physician designated as the treater by respondent. As such, the Board finds the medical bills listed in the Stipulation are the responsibility of respondent and its insurance company, with the exception of the December 27, 2006, bill from the Florida Institute of Health for $93.76 and the Wuesthoff Home Medical Equipment bill for $498.16, as claimant failed to satisfy her burden of proving a relationship between those and her work-related occupational disease. . . . The decision of the ALJ on this issue is reversed."

There appears to be a split of authority as to whether K.S.A. 2009 Supp. 44-510k(b) permits a post-award medical award for treatment incurred more than 6 months before the filing of the application for post-award medical benefits. In *Meeks v. Essex*

*Group,* Docket No. 170,265, 2002 WL 1491810, at *5 (Kan. Work. Comp. App. Bd. 2002), the Board similarly permitted a claimant to recover post-award medical benefits even though such expenses were incurred more than 6 months prior to the filing of the application for post-award medical compensation because the treatment was ordered by the authorized physician. As the Board did in this case, the Board in *Meeks* found that since the treatment was ordered by the authorized physician, the 6-month bar in 44-510k(b) was inapplicable. 2002 WL 1491810, at *5.

However, in several other cases decided by the Board, it seems that treatment incurred more than 6 months prior to the filing of the application for post-award medical benefits was held to be barred by 44-510k(b). See *Thomas v. Thomas Sign Company,* Docket No. 1,1001,120, 2005 WL 831901, at *4 (Kan. Work. Comp. App. Bd. 2005) (denying a claimant's reimbursement for post-award medical expenses for surgery because the surgery occurred more than 6 months before the claimant filed their application for post-award medical); *Eichem v. Stoneybrook Retirement Community,* Docket No. 236,960, 2002 WL 1838736, at *5 (Kan. Work. Comp. App. Bd. 2002) (ordering respondent to pay claimant a post-award medical award for all medical expenses incurred within 6 months of the claimant's application for post-award medical); *Newton v. Swan Manor, Inc.,* Docket No. 213,225, 2002 WL 1838729, at *5-6 (Kan. Work. Comp. App. Bd. 2002) (limiting claimant's post-award medical award to medical expenses incurred within 6 months of the claimant's application for post-award medical compensation).

In her first settlement with Boeing in 1995, Roles waived her right to future medical expenses. In the controversy at bar, the ALJ's final award did not order Boeing to pay any of Roles' future medical expenses. In fact, the award specifically ordered that "[f]uture medical benefits will be awarded only upon proper application to and approval by the Director of the Division of Workers Compensation." The subsequent orders in this case never modified this portion of the ALJ's order. Consequently, Roles is only entitled to future medical compensation if she properly sought relief under the post-award medical statute.

In this case, Roles filed an application for post-award medical benefits on July 6, 2007, shortly after the remand hearing. The application sought reimbursement for post-award medical treatment incurred after Roles' February 1, 2006, terminal date (the deadline after which Roles' medical expenses would no longer be considered for purposes of the final award hearing). All of the expenses claimed in the post-award application were incurred more than 6 months prior to the July 6, 2007, application (or prior to January 6, 2007).

As aforementioned, aside from the Board's decision in the case at bar, there is at least one other case holding the K.S.A. 2009 Supp. 44-510k(b) bar inapplicable to treatment ordered by the authorizing physician. However, there are at least three cases holding to the contrary. The situation is further complicated by the lack of authority from the Kansas Supreme Court on this issue. Therefore, we must decide between competing principles of statutory interpretation. Under the doctrine of operative construction, we should give deference to the Board's interpretation of workers compensation statutes. See *Higgins*, 38 Kan. App. 2d at 737. On the other hand, the Kansas Supreme Court has emphasized that where a workers compensation statute is plain and unambiguous, an appellate court must not speculate as to the legislative intent behind it but instead give effect to the statute's express language. *Bergstrom*, 289 Kan. at 607-08.

We defer to the principles of statutory interpretation enunciated in *Bergstrom* and choose to attach ordinary meaning to the legislative terms in K.S.A. 2009 Supp. 44-510k(b). In doing so, we find that the Board's order granting Roles post-award medical benefits must be reversed. K.S.A. 2009 Supp. 44-510k(b) makes it clear that an ALJ is without authority to award a claimant benefits for medical treatment incurred more than 6 months prior to an application for post-award medical compensation. The statute includes no explicit exception for medical expenses ordered or performed by the authorized physician. Therefore, the Board erred in awarding Roles post-award medical compensation.

Reversed.